**Ben ZUKE, Trustee in Bankruptcy of Imogene Jackson, Bankrupt, Appellant,**

v.

**MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Appellee.**

**No. 18841.**

United States Court of Appeals
Eighth Circuit.

Nov. 20, 1967.

Rehearing Denied Dec. 15, 1967.

Guilfoil, Caruthers, Symington, Montrey & Petzall, Darold E. Crotzer, Jr., St. Louis, Mo., of amicus curiae General Bancshares in support of appellee Mercantile Trust Co. Natonal Assn.

Welliver, Porter & Cleaveland, Warren Welliver, Columbia, Mo., of amicus curiae Missouri Bankers Assn. in support of appellee.

Wm. W. Quigg, Jefferson City, Mo., of amicus curiae Missouri Automobile Dealers Assn. in support of appellee.

Curtis L. Mann, of Love & Mann and David B. Lacks, St. Louis, Mo., for appellant.

W. Stanley Walch, of Thompson, Mitchell, Douglas & Neill, St. Louis, Mo., for appellee, J. Peter Schmitz of the same firm was on the brief.

Before VAN OOSTERHOUT, MEHAFFY AND HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

The sole question presented by this appeal is the correctness of the District Court's decision that a lienholder validly perfected a lien on a motor vehicle under Missouri statutes by paying the required fee and delivering to the Missouri Director of Revenue an executed lien perfection copy of a Missouri multipurpose form No. MMV–1 entitled "Application for Missouri Title and/or License" as furnished and required by the Missouri Director of Revenue.

The legal question is one of first impression and obviously of far-reaching effect. The facts are stipulated. Appellant is trustee in bankruptcy of the estate of the purchaser-owner of the automobile, and appellee Mercantile is the lienholder,

having obtained by transfer the purchase note and mortgage from the automobile dealer after consummation of the sale to the owner.

Approximately ten months after the owner purchased the automobile she filed a petition in bankruptcy and her trustee took possession of the automobile and refused to surrender it to Mercantile upon demand. Mercantile then filed a petition for reclamation. The trustee answered and also petitioned for authority to sell the automobile free and clear of liens. Upon a hearing, the referee held, in a sixteen-page typewritten opinion, that the lien was not validly perfected since only the lien perfection copy of the Application for Missouri Title and/or License, form No. MMV–1, had been delivered to the Director of Revenue. He interpreted the law as requiring the filing of all four copies of form No. MMV–1, hereinafter more fully described, in order to constitute an application for motor vehicle title, and as a prerequisite for lien perfection. Upon review the United States District Court for the Eastern District of Missouri reversed the referee and the published memorandum opinion of The Honorable John K. Regan is reported sub nom. In Re Jackson at 268 F.Supp. 434 (E.D.Mo.1967), wherein he held that the filing with the Director of a single copy disclosing the lien met the requirements for application of ownership although other copies, which would disclose payment of sales or use tax and license registration fee, were not delivered to the Director by the purchaser and the automobile was never registered for licensing purposes. We affirm the District Court.

On July 7, 1967, the bankrupt, a resident of Missouri, purchased a new automobile from a Missouri dealer, trading in a used automobile and making a substantial cash down payment. At the time of this purchase the bankrupt executed a negotiable promissory note secured by a chattel mortgage security agreement which was in due course of business and for value transferred, sold and delivered to Mercantile. Upon buying the automobile, purchaser executed the Missouri Director of Revenue's form No. MMV–1 in quadruplicate, designated as "Application for Missouri Title and/or License." The blue copy of the form, called the lien perfection copy, was forwarded by Mercantile to the office of the Supervisor of Motor Vehicle Registration, Department of Revenue of the State of Missouri. Accompanying this form was the prescribed fee. The Missouri Revenue Department received the lien perfection copy the following day, validated it and placed it in a suspense file to be held there until receipt of the other copies which were required to be furnished by the purchaser. Under Missouri statutes a purchaser cannot obtain a certificate of title or registration for licensing of an automobile until the purchaser files an identical copy of form No. MMV–1, indicating payment of the Missouri sales or use tax and license registration fee. At the time of bankruptcy, neither the purchaser nor anyone for her had filed the other form copies and hence no certificate of title was ever issued to her. The State of Missouri has for many years required the purchaser of an automobile to make payment of the sales or use tax, rather than the dealer.

In 1963 the Missouri General Assembly passed its version of the Uniform Commercial Code but made the effective date July 1, 1965. As is well known, the Uniform Commercial Code is comprehensive and the object of delaying its effective date was to permit study thereof so that its impact and effect could be clearly understood and to permit time for the adoption of any other necessary legislation with a simultaneous effective date. The Code as adopted in Missouri repealed the prior existing Missouri statutes relating to perfection of liens on motor vehicles as well as other chattels. As a consequence, the Missouri Legislature enacted a separate act to take effect simultaneously with the Code, known as the Motor Vehicle Lien Act, and sometimes referred to here as the Lien Perfection Act. V.A.M.S. §§ 301.600–301.670. The Code did not repeal or otherwise affect the registration of motor vehicles for

licenses and the requirement of payment of the sales or use tax by the purchaser. Admittedly, Missouri statutes authorized the Director of Revenue to prepare forms to be executed by the owner furnishing required information and indicating compliance with these statutes.

It is unnecessary and would be repetitious for us to specifically refer to all Missouri statutes predating or interrelated with either the Uniform Commercial Code or the 1965 Motor Vehicle Lien Act. The relevant statutes are cited and elaborately discussed in the District Court's opinion with which we have already indicated our agreement. Therefore, we adopt all such portions of the opinion for the purpose of supplying omitted details of the collateral statutes.

We are of the opinion that the 1965 Motor Vehicle Lien Act, V.A.M.S. § 301.600 is unambiguous, dispositive of the issue here, and meticulously complied with by Mercantile.

### The 1965 Motor Vehicle Lien Act or Lien Perfection Statute.

Paragraph 2 of V.A.M.S. § 301.600 is the pertinent provision of the Act and provides:

> "2. *A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue* of the existing certificate of ownership, if any, *an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee.* It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery." (Emphasis supplied.)

The Act also provides in V.A.M.S. § 301.650 ¶ 2 that "[t]he method provided in sections 301.600 to 301.670 of perfecting and giving notice of liens or encumbrances subject to sections 301.600 to 301.670 is exclusive."

### Form No. MMV-1.

This form served a multiple purpose and, as above stated, was entitled "Application for Missouri Title and/or License," and consisted of a white original and three carbon copies, each of a different color, but all containing identical information. The blue copy, according to the stipulation, was executed by the purchaser and is called the lien perfection copy. This form copy is actually the old form which had been in use previously inasmuch as on July 1, 1965, the effective date of the Uniform Commercial Code and the Lien Perfection Act, the new forms had not been distributed. The Missouri Director of Revenue promulgated new regulations, however, which actually were not materially different from the old ones, entitled "Instructions to Perfect a Lien on a Motor Vehicle." These instructions provided:

> "Number three (3) copy—Lien Perfection Copy—is forwarded to Director of Revenue, Motor Vehicle Registration by Lienholder, Finance Company or Banks, with One Dollar ($1.00) title fee. Upon receipt number three (3) copy is validated, the lien is now perfected. The perfected copy of lien is now held in a Suspense File awaiting the number one (#1) original copy from buyer."

We find in the stipulation of the parties the following:

> "That as of July 1, 1965, the Director of Revenue had not yet distributed the new forms as set forth in said Instructions and pending said distribution had agreed to accept one copy of the four-copy form theretofore in use (MMV-1) as the equivalent of the 'Lien Perfection Copy' described in said Instructions. Said form MMV-1 consisted of four identical copies of the application except that each copy was a different color."

### Opinion of the Attorney General.

On August 16, 1966, the Attorney General handed down official opinion No. 115 revising a former opinion. The fol-

lowing extract contains his pertinent conclusion:

"It is the opinion of this office that when a new or used car is purchased in Missouri a lien becomes perfected under Section 301.600, RSMo Supp. 1965, upon delivery to the Director of Revenue of either the existing title or manufacturer's certificate of origin and the new owner's application for title consisting of any one of the copies of Department of Revenue form number MMV–1–R2 along with the one dollar fee as required by Section 301.190, RSMo Supp.1965.

"It is our further opinion that payment of the Missouri Sales Tax is not necessary to perfect a lien."

### Opinion of the Referee.

The referee in bankruptcy reviewed the various related statutes and concluded that it was not the intention of the Legislature for a lien to be validated upon receipt by the Department of Revenue of a copy of the application form because the statute did not specifically so state. The referee concluded that only *all* of the multiple copies of the application taken together constituted the application. The referee also assumed that the Director of Revenue determined that only all multiple copies constituted the application, but this runs counter to specific instructions of the Director. The referee recognized that the Director was authorized by statute to furnish the various forms and took note that counsel for the Missouri Bankers Association working with representatives of the Automobile Dealers Association, various finance companies and the Director of Revenue met to consider the problem of a new statute covering perfection of security interest in automobiles; and that the drafting group prepared a bill which was enacted by the Legislature as the Lien Perfection Act, V.A.M.S. § 301.600.

Appellant would have us ignore the administrative view as being in conflict with the statute and suggests that no weight should be given the Attorney General's opinion because it revised a contradictory opinion rendered two months earlier.

It is admitted that the Director of Revenue is authorized to prepare forms on which application for certificate of ownership is to be made and that he in fact prepared such forms consisting of several copies. It is argued, however, that a so-called lien perfection copy is not an application, i. e., it is not a request for issuance of certificate of ownership, and that under the legal definition of application, the word is defined as the act of making a request for something. He would equate the copy here with the difference between an original Rembrandt painting and a copy thereof. The fallacy is that here "Rembrandt" (the purchaser-owner) signed the copy which contained the identical detailed information and is equally as valuable to the State of Missouri as the original or any of the other executed copies. True, the statute does not mention "copy" but it plainly provides that a lien on a motor vehicle is perfected by delivery to the Director of Revenue of "an application for certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee." Thus, Mercantile specifically complied with the statute by delivery to the proper state officer of the application signed by the owner containing the required information accompanied by payment of the prescribed fee. There is a patent difference between an *application for certificate of ownership* and a *certificate of ownership*. The latter cannot be issued in Missouri until the owner evidences payment of sales or use tax if any is due. Nowhere is there any Missouri statute, however, requiring payment of said taxes prior to filing an application for certificate of ownership.

Both parties have cited numerous Missouri decisions primarily relating to elementary rules of statutory construction as enunciated by the Missouri courts. We do not disagree with any; in fact, the Missouri rules are in accord with those generally approved by most all the

courts in this country. Our view is that the statute here is not ambiguous and, therefore, does not require construction to determine the intent of the lawmakers. The lien perfection statute plainly states that the lien on a motor vehicle is perfected by the delivery to the Director of Revenue of an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement and the required certificate of owner's fee. Mercantile did precisely that. It makes no difference which one of the executed copies of application for certificate of ownership is filed, and it matters not the color. Obviously, the Director of Revenue used the multiple copies in the interest of departmental efficiency and possibly also to have a record in his suspense file of the name and address of every person liable for unpaid sales tax on an automobile. If the General Assembly had intended to place a burden on anybody other than the owner to pay the licensing or sales or use taxes, it would certainly have given some indication in some statute of such an intention. This it has not done, and the courts lack authority to interpolate such a provision into the statute. The courts cannot make a tax collector out of either the seller, the lending institution or any other when Missouri's system plainly provides through its statutes that it is the responsibility of the owner of the automobile to make the payments before he actually is issued a title certificate. The lienholder is not penalized because of the default of the owner of the motor vehicle in failing to comply with statutory obligations which are not imposed upon the lienholder and for which he is not responsible. Nowhere in any Missouri statute is appellant, or anyone else, prohibited from filing an application for a title that would note a lien on an automobile, and for that matter the statutes clearly indicate that the owner does not personally have to present the application for title certificate.

The only need for statutory construction is when there is ambiguity in the statute, and we find none here. The lien perfection statute, since its adoption in 1965, comprises the only law on the subject of lien perfection on automobiles in Missouri and it was meticulously complied with by Mercantile in this instance.

We are grateful for the amicus curiae briefs furnished the court by the Missouri Automobile Dealers Association, Missouri Bankers Association and General Bancshares.

The order of the District Court is affirmed.