**FORD MOTOR CREDIT COMPANY, a corporation, Plaintiff-Respondent,**

v.

**Janet M. PEDERSEN et al., Defendant-Respondent,**

**Florissant Bank, a corporation, Intervenor-Appellant.**

**No. 39445.**

Missouri Court of Appeals, St. Louis District, Division One.

Dec. 27, 1978.

Richard D. Schreiber, Judson W. Calkins, Lashly, Caruthers, Thies, Rava & Hamel, Clayton, for intervenor-appellant.

James E. Hawk, Jr., Hawk & Mattingly, Clayton, for plaintiff-respondent.

Daniel J. O'Toole, Jr., Saitz, O'Toole, Kramer & Weinstock, St. Louis, for defendant-respondent.

Theodore S. Martin, Clayton, for witness Jasper Cillo.

SNYDER, Presiding Judge.

This is a replevin action brought by Ford Motor Credit Company (Ford Motor), a corporation, against Janet M. Pedersen to recover possession of a 1972 Ford Torino automobile. Florissant Bank, a corporation, was permitted to intervene in the action as a lien claimant. During the course of the litigation, Pedersen defaulted in her obligation on an installment note given by her to Florissant Bank. Florissant Bank then cross-claimed against her for the face amount due on the note, $1,240.64. The trial court made findings of fact, drew conclusions of law and rendered judgment granting possession of the automobile to Ford Motor and in favor of Florissant Bank on its cross-claim against Pedersen in the sum of $1,674.87, including interest and attorneys' fees.

Florissant Bank appealed, alleging that the trial court erred: (1) in holding that Ford Motor was entitled to possession over an innocent purchaser for value without knowledge of a perfected lien; and (2) in that its decision was against the weight of the evidence as to who should bear the loss between Florissant Bank and Ford Motor because of a delay by Ford Motor in perfecting its lien, and because Florissant Bank relied on a Missouri Department of Revenue title which indicated no lien was outstanding.

It is typical of such cases that the facts are complicated by the paperwork necessary to successive transfers of title to a motor vehicle.

On May 3, 1973, the automobile was traded in by Robert J. and Sharon Peters to Downtown Ford Sales, Inc. The Peters assigned a certificate of title to Downtown Ford Sales, Inc.

On June 25, 1973 Downtown Ford sold the car to Elizabeth Watkins and executed the "reassignment by registered dealer only" portion of the Peters' title to Watkins. Watkins signed a retail installment contract on the automobile and a Missouri title application form. The retail installment contract was purchased by Ford Motor from Downtown Ford. In conjunction with the purchase, Downtown Ford tendered to Ford Motor the retail installment contract, the lien perfection copy of the title application form, and the title to the automobile showing the reassignment by Downtown Ford to Watkins.

Watkins defaulted on the installment contract. In addition, she neither paid the sales tax nor sent the other copies of the title application form to the director of revenue. Thus, no title was ever issued in Watkins' name.

Ford Motor on August 23, 1973 filed the assigned title, the lien perfection copy of the title application form, and the required fee with the director of revenue. If a title had been issued to Watkins and statutory procedures followed, the lien of Ford Motor would have been shown on the title which would have been sent by the director of revenue to Ford Motor, the first lienholder. § 301.620(4), RSMo 1969.[1]

On August 1, 1973, the automobile was towed by the St. Louis Towing Company, on order of the St. Louis Police, for parking fines incurred by the former owner, Robert J. Peters. A title check by the police department with the director of revenue disclosed no outstanding lien on the automobile.

On September 10, 1973, pursuant to ordinances of the City of St. Louis, the automobile was sold at auction to Jay's Auto Parts and Salvage, Inc. by the St. Louis Towing Company. The price was $150.00.

On September 24, 1973 the director of revenue issued a certificate of title, free of liens, to Jay's Auto Parts.

On October 1, 1973 Jay's Auto Parts sold the automobile to defendant Janet M. Pedersen, who signed a promissory note to Florissant Bank and a security agreement pledging the automobile to secure payment of the note. The evidence as to the sale price was in conflict but the face amount of the note was $1,869.30. Although the assignment on the reverse of the title issued to Jay's Auto Parts was not signed by an officer, employee or agent of the corporation, when Pedersen applied for a Missouri certificate of title, it was issued in her name showing the lien of Florissant Bank. No other liens were shown on the title.

Ford Motor's replevin action was subsequently filed.

After Pedersen became delinquent in her payments, the maturity of the note was accelerated by Florissant Bank who then cross-claimed against Pedersen for the balance due.

The trial court rendered judgment awarding possession of the automobile to Ford Motor and in favor of Florissant Bank on its cross-claim against Pedersen. The trial court's conclusion that Ford Motor was entitled to possession of the automobile was based on *Zuke v. Mercantile Trust Company National Association*, 385 F.2d 775 (8th Cir. 1967).

The standard of review in a court-tried case is set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law.

Section 400.9–302 of the Uniform Commercial Code relating to the perfection of liens by filing does not apply to automobiles. When the Uniform Commercial Code was adopted by Missouri the legislature also passed § 301.600, which controls the method of perfecting liens and encumbrances on motor vehicles. Section 301.600.2 reads as follows:

2. A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of the

---

1. All statute references are to RSMo 1969.

existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery.

■ The lien of Ford Motor was perfected on August 23, 1973, the date of delivery of the requisite documents to the director of revenue, inasmuch as the delivery was not made within 30 days after June 25, 1973, the date the lien was created. Therefore, unless there are other reasons why the lien is not enforceable, Ford Motor must prevail.

Florissant Bank relies on: (1) the purchase by an innocent purchaser without knowledge of the lien; (2) the lack of notice to appellant and others because the title certificate was issued to Jay's Auto Parts showing no lien; and (3) the delay by Ford Motor in perfecting its lien.

■ Considering these points in order, the first two are refuted by the provisions of § 301.600.1, which reads as follows:

1. Unless excepted by section 301.650, a lien or encumbrance on a motor vehicle or trailer, as defined by section 301.010, is not valid against subsequent transferees or lienholders of the motor vehicle or trailer who took without knowledge of the lien or encumbrance unless the lien or encumbrance is perfected as provided in sections 301.600 to 301.670.

If a lien is not valid against "subsequent transferees . . . who took without knowledge of the lien or encumbrance unless the lien or encumbrance is perfected," then conversely, it must have been the intent of the statute that a lien is valid against subsequent lienholders if perfected as provided by the law.

Further, it is provided in § 301.650.2 that: "The method provided in sections 301.600 to 301.670 of perfecting and *giving notice* of liens or encumbrances subject to sections 301.600 to 301.670 is exclusive." (Emphasis

supplied). Admittedly the statute provides that liens shall be recorded by the director of revenue on certificates of title. § 301.-620(4). Ford Motor could not do this. Ford Motor did everything required of it to assure that its lien rights were perfected in accordance with the statute. It was the duty of the director of revenue to maintain records in such a way as to prevent the issuance of a certificate of title free of liens after Ford Motor's lien information had been delivered to him as required by § 301.600.2. Somewhere in the files of the director when the title to Jay's Auto Parts was issued was the lien copy of the application for title of Elizabeth Watkins showing the lien of Ford Motor. Through oversight, mistake, a failure of the system or call it what you will, this outstanding lien was not shown on the Jay's Auto Parts title.

Ford Motor's compliance with the statute gives it priority over subsequent lienholders. Florissant Bank cannot rely on or prevail because of its innocent purchaser status.

The statutes cited by Florissant Bank to support its argument that it should prevail as an innocent purchaser without notice of the lien, § 513.140 and § 428.070, relate to judgment executions and fraudulent conversions and have no application to the facts here. The cases cited in its reply brief to support the innocent purchaser theory, *Anderson v. Arnold-Strong Motor Co.*, 229 Mo.App. 1170, 88 S.W.2d 419 (1935), *Bonnell v. Mahaffey*, 493 S.W.2d 688 (Mo.App.1973), are distinguishable on the facts. In neither case were there disputed lienholder rights. Instead both concerned the statute which provides that the sale of an automobile without the required assignment of a certificate of title is fraudulent and void.

■ The third reason advanced by Florissant Bank for not recognizing the Ford Motor lien is the delay in perfecting it. The lien was created on June 25, 1973 when Elizabeth Watkins signed the retail installment contract. It was not perfected until August 23, 1973 when the requisite documents were delivered to and received by the director of revenue. However, even if the

**920**

lien papers had been sent immediately by Ford Motor the result would have been the same. The title to Jay's Auto Parts was issued on September 24, 1973, more than a month after Ford Motor's lien was perfected. Title to Janet Pedersen was issued on November 6, 1973, more than two months after perfection of the lien. Florissant Bank was not harmed by the delay but rather by the failure of the director of revenue to record an existing lien on the Jay's Auto Parts title.

■ Both parties cite *In re Jackson*, 268 F.Supp. 434 (E.D.Mo.1967) and *Zuke, supra*, by which the *Jackson* opinion was affirmed. The *Jackson* opinion contains a thorough and scholarly analysis of the Missouri statutes relating to automobile liens. *Zuke* is authority for the proposition that a lien on an automobile is perfected when the lien copy only of the application for title form is delivered to the director of revenue with the other necessary documents, even though the other copies of the application for title are never delivered by the automobile purchaser and the automobile never registered for licensing purposes. The facts in *Zuke* are almost identical to those being considered here.

In *Zuke*, Mercantile Trust Company National Association perfected its lien by sending the required documents, including the lien copy of the application for title, to the director of revenue. The purchaser failed to apply for a title by sending the other copies of the application to the director of revenue along with a remittance for the sales tax due. The automobile was never registered for licensing purposes and no certificate of title was ever issued. The purchaser subsequently filed for bankruptcy and the trustee refused to honor Mercantile's lien.

The Eighth Circuit Court of Appeals held that Mercantile was entitled to possession under these circumstances. *Zuke* confirms Ford Motor's position that its lien should be honored.

Florissant Bank argues that *Zuke* should be distinguished on the facts because of the issuance to Jay's Auto Parts of the lien-free title and the bank's reliance on that title, and claims that Ford Motor's lien "passed out of existence," thus entitling Florissant Bank to possession. No cases are cited to support that theory and the argument is not persuasive. The position of the trustee in bankruptcy in *Zuke* was similar to that of Florissant Bank. Neither had actual notice of the prior lien. Each had a claim which arose subsequent to the perfecting of the prior lien. The trustee in bankruptcy, in fact, could be said to have had a stronger claim because he was acting as a fiduciary in representing the interests of creditors. Florissant Bank acted solely for itself. The trustee was not allowed to prevail. Similarly, the ruling here must be against Florissant Bank.

■ Florissant Bank contends Ford Motor should have redeemed the automobile when the public auction was held in accordance with the City of St. Louis ordinances, but it fails to cite any authority to support the theory that a lienholder must redeem a chattel at a public sale or lose its lien.

■ Finally, Florissant Bank advances an equitable argument, claiming it should prevail because Ford Motor was in privity with Elizabeth Watkins, a wrongdoer who failed to pay the sales tax due on the automobile. Again no authority is cited for this very weak reasoning and it is rejected.

There was substantial evidence to support the judgment and no error either in the declaration or application of the law by the trial court.

No appeal was taken from the judgment on the cross-claim.

The judgment is affirmed.

WEIER, C. J., and SMITH, J., concur.