**In re STN ENTERPRISES, INC. d/b/a Atwater Arms, Debtor.**

**Bankruptcy No. 84–98.**

United States Bankruptcy Court, D. Vermont.

Jan. 21, 1985.

Joseph B. Collins, Springfield, Mass., for Wayne D. Wetzel, Jr.

John R. Canney, III, and Holly K. Nelson, of Carroll, George & Pratt, Rutland, Vt., for debtor—defendant.

Jerome I. Meyers, Norwich, Vt., for Creditors' Committee.

## MEMORANDUM OPINION ON MOTION OF WAYNE D. WETZEL, JR. FOR RELIEF FROM STAY

CHARLES J. MARRO, Bankruptcy Judge.

The Court has before it for determination the motion of Wayne D. Wetzel, Jr. for relief from stay filed September 27, 1984.

### FACTS

The Debtor, STN Enterprises, Inc., was organized as a corporation on August 6, 1982 for the purpose of engaging in the purchase and sale of collectible firearms and related collectibles under the trade name of "Atwater Arms." Stephen T. Noyes was its president, sole stockholder and the driving force behind the corporate business. The corporation also conducted

an investment program which included the purchase of certain collections of antique firearms. Noyes died on May 5, 1984 as a result of injuries received in an automobile accident, and for several weeks prior thereto, the Debtor was having financial difficulties. These apparently precipitated the filing of a Petition for Relief on May 29, 1984 under Chapter 11 of the Bankruptcy Code. The Schedules show total liabilities of $12,989,844.35 and assets of $5,284,415.05. Included in the assets are Bennington firearms inventory and Greenwich firearms inventory, listed as an estimated market value without forced sale of $2,500,000.00 and $1,500,000.00, respectively.

Wayne D. Wetzel, Jr. was employed as a consultant for the debtor d/b/a Atwater Arms from October 1983 until the death of Stephen Noyes on May 5, 1984. Prior to that time Wetzel had some experience in the purchase and sale of firearms and he had some transactions with the debtor from which he realized profits of $15,000.00 to $20,000.00 in 1982; $20,000.00 to $25,000.00 in 1983. Up to the date of hearing he had also received a profit of $20,000.00 to $25,000.00 in 1984.

On January 19, 1984 Wetzel had a conversation with Noyes in the presence of Ed Pierce, who also had some association with Noyes during which Noyes informed Wetzel that he was recovering from an airplane crash in which he broke both legs and was close to death; that his circumstances as a result of the accident were unsettled as to the dealings of both Wetzel and Pierce with Atwater Arms; that he assumed that Wetzel would feel uncomfortable and that, in order to make Wetzel comfortable, he wanted to pledge to him some sort of security for the moneys he had advanced to Atwater Arms and that he would subsequently advance; that he had various items of inventory and that he would give to Wetzel an item or items which would secure his pledge; that it would take a couple of days for him to figure out the piece or pieces of inventory he wanted to give to Wetzel; that at a future date he might have a buyer for the item he delivered to Wetzel and, in that case, they could exchange the collateral.

On January 30, 1984 Wetzel had a conversation with Noyes in Bennington, Vermont concerning the probability of Wetzel advancing funds to Noyes for the purchase of guns. At that time Wetzel informed Noyes that he could advance $75,000.00 which Noyes characterized as "fine" and indicated that he would be able to pay back to Wetzel the advance of $75,000.00 plus 25% in early April, 1984. Accordingly, Wetzel did loan to Atwater Arms the sum of $75,000.00 which was evidenced by two checks dated January 30, 1984 payable to Atwater Arms, one in the sum of $60,000.00 drawn by Wetzel against his Merrill Lynch Cash Management account and the other in the sum of $15,000.00 drawn on the Bank of New England, N.A. Both of these checks contained the memo 4/1/84 which apparently referred to the repayment date.

On March 13, 1984 Wetzel paid over to Atwater Arms the sum of $78,750.00 as an investment in the so called Arid Zone purchase. This payment was evidenced by a check dated 3–13 1984 from S.T.N. Enterprises, Inc. D-B-A Atwater Arms in the sum of $78,750.00 payable to Wayne D. Wetzel, Jr. It represented a return of an investment of $75,000.00 which Wetzel had made with Atwater Arms plus a profit of $3,750.00. This check originally was endorsed by Wetzel for deposit in his acct. # 5520–9811 but this endorsement was crossed off by him and Wetzel substituted one reading: "Pay to the order of Atwater Arms for Arid Fore purchase."

On March 17, 1984 Wetzel paid over to Atwater Arms the sum of $21,250.00 as an additional investment in the Arid Zone purchase. This payment was evidenced by a check in the sum of $21,250.00 dated 17 March 1984 payable to the order of Atwater Arms and drawn on Wetzel's Merrill Lynch Cash Management account. It carried the notation "For 4/10 deal–10% Arid Zone."

On April 20, 1984 Wetzel paid over to Atwater Arms the sum of $10,000.00 for

the purchase as an investment of two Colt *Commerative* State guns (ME) and (MA). This payment was evidenced by a check dated 20 April 1984 in the sum of $10,-000.00 payable to Atwater Arms and drawn on his "Danforth Enterprises D/B/A Bershire Investment Rarities" account with the Hudson National Bank of Hudson, Massachusetts. This check carried the notation "MA & ME guns." In addition Atwater Arms gave to Wetzel two separate receipts each for $5,000.00 and in his trade name "Bershire Investment Rarities". The receipts carried the notations: "For the purchase of one Colt *Commerative* State gun S/N." One of them had (ME) and the other (MA) as designations of the states so commemorated.

As security for the loan of $75,000.00 made by Wetzel to Atwater Arms on January 30, 1984 Wetzel did on that date take possession from Atwater Arms of a Parker A1 Special rifle serial # 226546 and Wetzel was in continuous possession of this firearm until April 30, 1984. This weapon had a value of $175,000.00 to $200,000.00.

On April 26, 1984 Wetzel received a telephone message from Noyes that he had a prospective buyer for the Parker A1 special rifle and requested him to bring it back and Noyes would exchange it for other items in his inventory of similar value. Accordingly on Monday, April 30, 1984 Wetzel loaded the Parker A1 special in his car and, in accordance with instructions from Noyes, drove to Greenwich, Connecticut to pick up 15 or 20 arms for delivery to the place of business of Atwater Arms in Bennington, Vermont.

On arrival at Bennington Wetzel delivered the guns he had picked up in Greenwich, Connecticut to Noyes, leaving the Parker A1 special in his car. Following a conversation with Noyes at his place of business during which Noyes reinterated that he wished Wetzel to be protected and that he would exchange a pair of cased colts for the Parker A1 special, Wetzel obtained the Parker from his car and delivered it to Noyes. At the same time Wetzel received in exchange a cased pair of deluxe engraved, ivory stocked, Colt Third Model Dragoons, Serial numbers 13128 and 13551. These weapons have a current value of from $160,000.00 to $180,000.00 and they are still in the possession of Noyes as security for the loan be made to Atwater Arms.

On April 30, 1984 when Wetzel received the pair of colt dragoons in exchange for the Parker A1 Noyes asked him to type up U.C.C. forms. Wetzel did prepare them. They showed STN Enterprises D/B/A Atwater Arms of Bennington, Vermont as debtor and Wayne D. Wetzel, Jr. of Bolton, MA as secured party with the property covered described as "Cased Pair of deluxe engraved, ivory stocked Colt Third Model Dragoons S/N 13128 & S/N 13551." These financing statements were signed in behalf of Atwater Arms by Stephen T. Noyes as debtor and by Wayne D. Wetzel, Jr. as secured party. They were filed in the office of the Town Clerk of Bennington, Vermont on May 4, 1984 and apparently in the office of the Secretary of State on May 8, 1984.

## DISCUSSION

Wetzel testified that all of the payments made by him to Atwater Arms on January 30, 1984, on March 13, 1984, on March 17, 1984 and on April 20, 1984 in the sums of $75,000.00, $78,750.00, $21,250.00 and $10,-000.00, respectively, for a total of $185,-000.00 constituted loans and he contends that he has a perfected security interest in the colt dragoons.

A careful examination of Wetzel's testimony and the supporting documentation convinces the court that the only loan transaction was that of January 30, 1984 when Wetzel paid over to Noyes in behalf of Atwater Arms the sum of $75,000.00 evidenced by the two checks in the sums of $60,000.00 and $15,000.00. This was the only date on which Wetzel and Noyes had any conversation about a loan. At that time Wetzel clearly indicated to Noyes that he could lend him the sum of $75,000.00 as a limit. As part of the transaction Noyes set early April as a repayment date and

this is supported by the memo of "4/1/84" appearing upon the two checks.

The notations on all of the other checks refer specifically to purchases. The endorsement on the check for $78,750.00 reads: "Pay to the order of Atwater Arms for Arid Fore purchase"; the memo on the $21,250.00 check reads: "4/10 deal—10%—Arid Zone" and the $10,000.00 check carries the memo: "MA & ME guns." In addition the two receipts for those guns received by Wetzel from Atwater Arms and produced at the hearing by the debtor recite that the sum of $5,000.00 was paid by Wetzel "For the purchase of one Colt Commerative State gun S/N (ME)" and $5,000.00 for the purchase of a similar weapon with the same designation except that (MA) is substituted for (ME).

The court observes that Wetzel has been a sophisticated investor in firearms for a number of years and that his dealings with the debtor for each of the years 1982, 1983 and 1984 resulted in a profit about $20,-000.00 to $25,000.00; that the check of $78,750.00 which he received from the debtor and endorsed over to Atwater Arms on or about 3–14–84 represented an investment of $75,000.00 which he made on January 30, 1984 which was the very day on which he loaned to the debtor the sum of $75,000.00. The balance of $3,750.00 represented a profit over a period of less than 2 months. It also appears that Wetzel kept accurate and meticulous records of his transactions with the debtor and, in all probability, if all of the transactions hereinabove referred to had been intended as loans the checks and other documentation would have so reflected. In sum, the court concludes that the total amount loaned by Wetzel to the debtor was $75,000.00 on January 30, 1984. Having so determined it becomes necessary to decide whether Wetzel's claim of a perfected security interest to the extent of the amount of the loan is justified.

The creditors' committee of creditors and the debtor contend that when Wetzel and the debtor agreed on April 30, 1984 for the substitution of possession in Wetzel of the colt dragoons for the Parker A1 rifle a new transaction resulted; that this broke the chain of possession and that Wetzel can only claim a security interest by possession in the colt dragoons as of April 30, 1984 well within 90 days prior to the filing of the debtor's petition for relief on May 29, 1984 with the result that a preference was created which the debtor may avoid. The court disagrees.

■ It is universally held that the validity, nature and effect of liens are governed by the law of the state where the property is situated. *Meyer v. United States*, (1963) 375 U.S. 233, 238, 84 S.Ct. 318, 321, 11 L.Ed.2d 293; *In re Spectra Prism Industries, Inc.* (Bankr.Appellant Panel—9th Cir. 1983) 28 B.R. 397, 399; *In re Knox-Powell-Stockton Co.* (9th Cir.1939) 100 F.2d 979. *Porter v. Searle* (10th Cir.1955) 228 F.2d 748; *In re Air Vermont, Inc.* (Bankr.D.Vt. 1984) 40 B.R. 323, 328.

Under the Uniform Commercial Code as adopted in this state a security interest may be perfected either by the filing of proper financing statements in the required places 9A V.S.A. § 9–401 or by the taking of possession of the collateral by the secured party without filing. 9A V.S.A. § 9–305.

■ In the case at bar Wetzel contends that by taking possession of the Parker A1 rifle on January 30, 1984 and substituting it, as per agreement with the debtor on April 30, 1984 for the colt dragoons he acquired a perfected security interest in the colt dragoons as of January 30, 1984. He argues further that it was the intention of both parties that he was to have a continuing security interest in collateral from its inception on January 30, 1984 to secure the loan he made to Atwater Arms. The admitted evidence supports his position. The language of § 9–305 of the U.C.C. is clear and unequivocal that a security interest is perfected by possession from the time possession is taken without relation back. See, *In re Granite City Cooperative Creamery Association, Inc.* (Bankr.D.Vt.1970) 7 U.C.C. Rep.Serv. 1083, 1087 affirmed (U.S. District Court—1970) 8

U.C.C. Rep.Serv. 393, (U.S. CCA2d Cir. 1971) 9 U.C.C. Rep.Serv. 102; *Transport Equipment Co. v. Guaranty State Bank* (10th C.C.A.1975) 17 U.C.C. 1, 7; *Raleigh Industries of America, Inc. v. Tassone* (Cal.Court of Appeal, 2nd Cir.1977) 141 Cal Rep. 641; 22 U.C.C. Rep.Serv. 1235, 1241.

It is true that on April 30, 1984 by agreement of the parties the colt dragoons were substituted for the Parker A1 rifle. The exchange of possession occurred simultaneously. As a result of the exchange the debtor received a rifle worth from $175,000.00 to $200,000.00 for colt dragoons having a value of from $160,000.00 to $180,000.00. Hence, there was no diminution of the debtor's estate on April 30, 1984 but a net gain.

As distinguished from a substitution of collateral in the possession of a debtor there is a paucity of cases dealing with the effect of substitution of such collateral subject to a security interest while in the possession of a secured party. The court observes that opposite results have been reached in two cases addressing this issue. In *Leonard v. Dahlke Trailer Sales & Leasing Co.* (U.S. District Court—D.Minn. 1982) 16 B.R. 366, 34 U.C.C.Rep.Serv. 1002 a repairman had acquired a mechanic's lien by possession of a trailer upon which he had made repairs and surrendered it to its owner without payment in exchange for another trailer which also needed repairs which he held for payment of repairs on the first trailer. He was paid within 90 days of the filing of a petition for relief by the owner. The court held that such payment constituted a preference voidable by the trustee. It reasoned that U.C.C. § 9–305 does not provide for the perfection of a possessory lien through possession of substitute collateral and the repairman's lien on the first trailer was extinguished when that trailer was returned to the owner. It is noted that this case involves a statutory mechanic's lien which requires the existence of possession in the repairman until payment is made while the instant case involves a consensual security interest. With the same type of lien as herein exists the 9th Circuit reached an opposite result.

See *In re Holiday Airlines Corp.—Danning v. World Airways, Inc.* (U.S. C.C.A.—9th Cir.1981) 647 F.2d 977, 31 U.C.C. Rep. Serv. 1172. In that case, pursuant to an agreement between the lessee of aircraft, Holiday Airlines Corporation, and World Airways, Inc., a creditor of Holiday, the latter became entitled to a lien to secure payment for supplied services and maintenance to an aircraft 971 delivered to World on December 7, 1974. The reasonable value of these services was $70,165.05. World continued in possession from December 7, 1974 until January 24, 1975 on which date all of Holiday's aircraft, including both 971 and 974 were in World's possession for servicing. To meet its schedule commitments Holiday needed to obtain the release of at least some of its aircraft but World would release none unless payment for services with respect to any aircraft released was made or adequate security to assure such payment was provided. To solve this problem it was agreed that World would surrender possession of aircraft 971 and Holiday would execute and deliver to World a chattel mortgage on aircraft 974 to secure the $70,165.05 owed with respect to aircraft 971. This was accomplished on January 24, 1975. However, possession of aircraft 971 was surrendered several hours before the chattel mortgage on aircraft 974 was executed and delivered. This chattel mortgage was recorded pursuant to 49 USC § 1403 on January 28, 1975.

Aircraft 974 was sold immediately thereafter and World received payment on January 31, 1975 of the $70,165.05 due for servicing aircraft 971. The end for the purposes of this case came shortly thereafter. On February 13, 1975 Holiday filed under Chap. XI and subsequently was adjudicated bankrupt.

The Ninth Circuit Court recognized that, inasmuch as World's lien on aircraft 971 lost its perfected status on January 24, 1975 when possession of this aircraft was surrendered to Holiday several hours before the Chattel mortgage on aircraft 974 was executed, it is possible to argue execution of the mortgage and payment of $70,-

165.05 to World was in discharge of an antecedent debt and did cause a diminution of Holiday's estate. It could be pointed out that, rather than a mere substitution of security occurring, the proper characterization is that the chattel mortgage replaced the perfected security previously surrendered. This, in effect, is the same argument made by counsel for the creditor' committee who maintained that the substitution of the Parker A1 rifle for the Colt dragoons constituted two separate transactions. However, the Ninth Circuit rejected the foregoing argument and held that no preference was created. Its reasoning is cogently expressed 647 F.2d at 982, at 31 U.C.C.Rep.Serv. 1179 thus:

"The replacement characterization exalts from over substance. A similar analysis, also employed to claim that the creation of a security interest amounted to a preference, has been rejected when, to secure a current advance, the instrument creating the previously agreed upon security interest was executed several days after the date of the advance. *Dean v. Davis,* 242 US 438, 37 S Ct 130, 61 L Ed 419 (1917). Substantial contemporaneity appears to be all that is required. Id. at 443, 37 S Ct at 131. The proper characterization, therefore, is that the events of January 24, 1975 constituted a substitution of one security for another. This did not amount to a preference where no diminution of the debtor's estate occurred. See 4 Collier on Bankruptcy, § 547.22 (1980). None such occurred here. We hold that the so-called 'gap' on January 24, 1975 generated no preference."

This court again points out that rather than a diminution in the estate of the debtor by the firearms' exchange there was a gain. The loan transaction involving $75,000.00 on January 30, 1984 was made pursuant to an agreement by the parties that Wetzel was to have a continuing security in firearms to secure the loan and the exchange of the cased pair of dragoons for the Parker A1 rifle was in fact a substitution of collateral. With these facts this case is on all fours with *Holiday Airlines Corp.—*

*Danning v. World Airways, Inc.,* supra, and the court agrees with the rationale of the 9th Circuit. Accordingly, this court concludes that Wetzel has a perfected security interest in the pair of Colt dragoons to the extent of the $75,000.00 loan made on January 30, 1984.

Judgment, in accordance with this memorandum opinion, is this day being entered.

### JUDGMENT

This action came on for hearing before the court and the issues having been duly tried and a decision having been rendered,

IT IS ORDERED AND ADJUDGED:

1. The motion of Wayne D. Wetzel, Jr. for relief from stay is DENIED.

2. Wayne D. Wetzel, Jr. has a perfected security interest in the cased pair of deluxe engraved, ivory stocked Colt Third Model Dragoons, S/N 12128 & S/N 13551 now in his possession to the extent of his loan to the debtor i.e. $75,000.00 plus interest at the legal rate of 12% per annum from January 30, 1984 to the date of payment.

3. The sum of $110,000.00 representing the balance of the payments made by Wetzel to the debtor on March 13, 17 and April 20, 1984, plus interest at 12% per annum from these dates to May 29, 1984 shall constitute an unsecured claim and shall be so allowed as such in the general order allowing claims.

4. The parties shall by mutual agreement make arrangements to sell the aforesaid colt dragoons at the highest price obtainable and from the proceeds satisfy the security interest of Wetzel. In the event of their failure to reach such an agreement within 30 days they or either of them shall notify the court in which event the court shall determine the method of sale of these firearms.