In re Richard G. LEFEVRE, Jr. and Andrea M. Lefevre, Debtors.

**GENERAL MOTORS ACCEPTANCE CORPORATION, Plaintiff,**

v.

**Richard G. LEFEVRE, Jr. and Andrea M. Lefevre, Defendants.**

**Bankruptcy No. 82–125.
Adv. No. 82–0137.**

United States Bankruptcy Court,
D. Vermont.

Jan. 7, 1983.

Robert K. Bing, Burlington, Vt., for plaintiff.

James B. Anderson, New York City, for defendants.

## MEMORANDUM AND ORDER

CHARLES J. MARRO, Bankruptcy Judge.

This adversary proceeding arises from a complaint for relief from automatic stay filed by the plaintiff under which it seeks to repossess a 1982 GMC Pickup Truck in which it claims a perfected security interest. The defendant, Andrea M. Lefevre, filed an Answer and counterclaim under which she seeks to avoid the lien of the plaintiff pursuant to the provisions of 11 U.S.C. § 522(g) and (h) to the extent that the lien impairs her claim of exemption.

Defendant, Andrea M. Lefevre, also filed a motion for summary judgment but this has become moot by virtue of hearings held at which testimony was taken as to the value of the vehicle and certain documents were admitted as exhibits bearing on the creation and perfection of the plaintiff's security interest in the vehicle.

## THE FACTS

The defendants filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 7, 1982 with the schedules showing secured indebtedness of $17,368.36 requiring monthly payments of $350.32 which were current on the date of filing. They had only 2 unsecured debts amounting to $1,694.09. Debtor, Richard G. Lefevre, Jr., has a monthly income of $1,219.41 but his wife has none. They have monthly expenses of $868.64 leaving a balance of $350.77 for the payment of their obligations. They have tax refunds of $647.00 which could be applied towards the payment of their unsecured indebtedness leaving a balance due of about $1,000.00. It could appear that as of the date of the petition they were in a fairly good financial condition.

On February 27, 1982 debtor, Richard G. Lefevre, Jr. gave a written order for a 1982 GMC Pickup to Ross Pontiac, Inc., a car dealer in Granville, N.Y. This vehicle was financed on March 2, 1982 through the plaintiff, G.M.A.C., for a cash price of $7,696.00 less a cash downpayment of $1,300.00, leaving a balance of $6,396.00 which with finance and other charges totalled $10,291.35. This was amortized over a period of 48 months with a monthly payment of $187.32. Under this installment contract, signed only by Richard G. Lefevre, Jr., a security interest in the vehicle was granted to the plaintiff.

On March 2, 1982 both debtors, Richard G. Lefevre, Jr. and Andrea M. Lefevre, executed an application addressed to the State of Vermont, Department of Motor Vehicles, for vehicle registration, tax and title application. This recited that the owner and co-owner were Richard G. Lefevre, Jr. and Andrea M. Lefevre, respectively, and that G.M.A.C. was lienholder. Pursuant to this application the Vermont Motor Vehicle Department did on March 25, 1982

issue a Certificate of Title for this 1982 GMC Pickup with Richard G. Lefevre and Andrea M. Lefevre shown as owners and G.M.A.C. as first lienholder. The dates of purchase and titling are given as March 2 and 9, 1982, respectively.

At the time of the filing of the plaintiff's complaint for relief from stay the defendants were in default for 3 monthly payments of $187.32 each and the current balance then due on the truck was $8,616.72. It has a value of about $6,600.00.

### DISCUSSION

■ Defendant, Andrea M. Lefevre, argues that the security interest of G.M.A.C. is not perfected as to her since she did not sign the security agreement. She contends that the vehicle was owned by her and her husband as an estate by the entirety and that as a debtor for relief she is entitled to claim the vehicle as exempt by virtue of Section 522(b)(2)(B) of the Bankruptcy Code as recited in Schedule B–4, attached to her petition for relief. Further this debtor claims that the trustee has taken no affirmative action to avoid the lien of the plaintiff and that she is entitled to do so pursuant to § 522(g) & (h) of the Code. Under certain circumstances, which do not exist in this case, the debtor's position would be well taken. However, there was no evidence introduced by the debtor to establish ownership as an estate by the entirety. It is undisputed that the vehicle was purchased by the husband with funds furnished to him by G.M.A.C. upon his granting it a security interest by his execution of the installment contract. Simultaneously therewith and apparently as an accomodation to him and his wife, they applied for the certificate of title in both names recognizing G.M.A.C. as lienholder. The transfer of the vehicle was to the husband and not to him and his wife as tenants by the entirety. Debtor, Andrea M. Lefevre, appeared to argue that her husband had made a gift to her of an interest in the vehicle but this was not established. The more logical conclusion is that both husband and wife intended the transfer of the truck to the husband with both names appearing on the certificate of title as owners as a matter of convenience.

The debtor relies heavily on *In Re Corsi,* 24 U.C.C. 216 decided by this Court in 1978. In this case the husband executed the security agreement and the certificate of title showed the wife, Mary W. Corsi, as owner. The lienholder, Stewart, represented to the Court that after the purchase of the vehicle covered by the security agreement and the execution of the retail contract he did, in fact, make a gift of the vehicle to his wife. There was no evidence of an intent on the part of the wife to create a lien in favor of Stewart. In the absence of such intent and the failure of Mary Corsi to grant a security interest by the execution of a security interest none could be perfected in favor of Stewart as lienholder.

The instant case is clearly distinguishable and, therefore, any reliance by the debtor herein on *Corsi* is misplaced. The execution of the application for the title certificate by both Mr. and Mrs. Lefevre naming Ross Pontiac, Inc. as lienholder evinced an intent by them to perfect the security interest created by the installment contract signed by the husband. In sum this installment contract, the application for the certificate of title signed by both husband and wife with the plaintiff's assignor named as lienholder, the issuance of the certificate of title showing G.M.A.C. as lienholder collectively establish both the creation and perfection of the security interest. This was pointed out in *Corsi* 24 UCC. 218 as follows:

"The absence of a formal security agreement is not necessarily fatal if, in fact, there are written documents which collectively establish the intention of the parties to execute a security agreement by the grant of a security interest in identifiable articles of personal property. *In re Numeric Corp.* 485 F.2d 1328, 13 UCC.Rep 416 (1st Cir.1973)."

In *Numeric* (CCA. 1st Cir.1973) 485 F.2d 1328, 13 UCC. 416, 420 commenting on the need of a formal security agreement required by § 9–203(1)(b) of the UCC the Court said:

"we have a little difficulty concluding that a separate formal document entitled 'security agreement' is not always necessary to satisfy the signed-writing requirements of § 9–203(1)(b). The draftsmen of the UCC ascribed two purposes to that requirement. One purpose was evidentiary, to prevent disputes as to precisely which items of property are covered by a secured interest. See Uniform Commercial Code § 9–203, Comment 3; *J.K. Gill Co. v. Fireside Realty Co.,* 262 Or. 486, 488, 499 P.2d 813 (11 UCC.Rep. 202, 204) (1972). The second purpose of the signed-writing requirement is to serve as a Statute of Frauds, preventing the enforcement of claims based on wholly oral representations. See Uniform Commercial Code § 9–203, Comment 5.

"Given these two limited purposes of § 9–203(1)(b), and the flexible definitions of 'security agreement' and 'agreement' found elsewhere in the Code, there seems to be no need to insist upon a separate document entitled 'security agreement' as a prerequisite for enforcement of an otherwise valid security interest. A writing or writings, regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, would satisfy both the formal requirements of the statute and the policies behind it." *Citing cases.*

This Court is satisfied that both debtors in this case clearly intended that G.M.A.C., as assignee of Ross Pontiac, Inc., should have a perfected security interest in the 1982 GMC Pickup and that one was in fact created and perfected from the documents which they executed and delivered. In addition it would be clearly unconscionable to permit them to accept the funds from G.M.A.C. to purchase the vehicle, acknowledge the security interest and the lien in their application for the title and subsequently permit them to retain the vehicles without any obligation for repayment of the loan. Having signed the application for the title in which they recognized the existence of the lienholder and having accepted the loan proceeds for payment of the vehicle they should be estopped from denying the perfection of the security interest.

### ORDER

Upon the foregoing, IT IS ORDERED as follows:

1. The Counterclaim of Andrea M. Lefevre, debtor, to avoid the lien of G.M.A.C. is DISMISSED with prejudice.

2. The automatic stay under § 362 of the Bankruptcy Code is lifted and G.M.A.C. is authorized to repossess the 1982 GMC Pickup GMCTC10903 and proceed with foreclosure of its security interest.