In re James A. FARNHAM, Sr. and Joyce Farnham, d/b/a Farnham Transportation, Debtors.

Bankruptcy No. 85–169.

United States Bankruptcy Court, D. Vermont:

Jan. 27, 1986.

James B. Anderson, Rutland, Vt., for Intern. Harvester Credit Corp., a creditor.

Alan R. Medor, Rutland, Vt., for trustee.

## FINDINGS & ORDER

FRANCIS G. CONRAD, Bankruptcy Judge.

This dispute between the trustee and a creditor who has moved for relief from stay concerns a motor vehicle that, like the phoenix, has risen from its ashes. The creditor had perfected a security interest in a truck that was largely destroyed in an accident. The creditor believes that this security interest covers a reconstructed truck incorporating parts salvaged from the original vehicle. In any event, the creditor says, it has perfected its interest in the reconstructed vehicle by delivering an application for a certificate of title to the Vermont Department of Motor Vehicles. The trustee argues that the creditor's security interest does not extend to the newly titled vehicle and that its effort to perfect a security interest in this vehicle was ineffective because the new certificate of title did not identify a lienholder. If the creditor's interest in this vehicle is not perfected, the trustee, as a hypothetical lien creditor under 11 U.S.C. § 544(a), has priority and may claim the vehicle for the benefit of the estate. We hold, first, that the creditor's perfected security interest in the original truck does not extend to another truck with a new vehicle identification number. Because it is not the business of this Court to rewrite statutory law in the interest of public policy, we also hold that a creditor in

Vermont perfects its security interest in a vehicle by delivering an application for a certificate of title in accordance with 23 V.S.A. § 2042(b), despite a clerical failure to note the encumbrance on the title. Since the debtors have no equity in the vehicle, we grant the creditor's motion to modify the stay so it may foreclose its perfected security interest in the new truck.

The creditor, International Harvester Credit Corporation ("Harvester"), perfected a security interest in the debtors' new 1984 International Harvester tractor, model F–4370, vehicle identification number 2HSVDJXRXECA14065, and "all replacements, repairs and accessions thereto" on September 7, 1984. This truck was largely destroyed in an accident in December 1984. The debtors constructed another truck with a glider kit (a new frame and cab) using parts salvaged from the destroyed truck. This reconstructed truck, a 1984 rebuilt tractor, model 4370E420, vehicle identification number 2HTVH0000ECA11763, is the subject of this proceeding. On January 14, 1985, Mr. James Farnham, the debtor, signed a "substitution agreement" agreeing to substitute the second, reconstructed vehicle (vehicle identification number 2HTVH0000ECA11763) for the original vehicle (identification number 2HSVDJXRXE-CA14065). Because this second truck had a different vehicle identification number, to perfect its lien Harvester delivered an application for a certificate of title indicating its name, address, and the date of the original security agreement to the Vermont Department of Motor Vehicles on February 1, 1985. Through a clerk's error, the certificate of title issued by the Department of Motor Vehicles on the same day did not identify Harvester's lien. The notation on the certificate of title under "FIRST LIEN-HOLDER NAME & ADDRESS" is "NONE." Apparently neither the debtors nor the creditor noticed this omission. Some eight months later, on September 20, 1985, the Farnhams filed a joint petition to liquidate under chapter 7 of the Bankruptcy Code.

On October 21, 1985, Harvester moved for a modification of the stay imposed by 11 U.S.C. § 362(a) in order to repossess the reconstructed truck. In the alternative, Harvester asked the Court for adequate protection under 11 U.S.C. § 361. We held a preliminary hearing on the creditor's motion on November 7th and a final hearing on December 3rd. The parties have submitted memoranda of law and a stipulation of facts. The parties agreed that the Court may decide this matter on the stipulated facts, the several memoranda, and the oral arguments at the final hearing.

Under the strong arm clause, 11 U.S.C. § 544(a), the trustee enjoys the status of a hypothetical lien creditor. An unperfected security interest remains subordinate to the rights of a judicial lien creditor, 9A V.S.A. § 9–301(1)(b). Although some commentators have recently questioned the justification for conferring on a trustee the power to avoid security interests unperfected at bankruptcy, this provision has been codified since 1910. See McCoid, Bankruptcy, the Avoiding Powers, and Unperfected Security Interests, 59 Amer.Bkrtcy. L.J. 175 (1985); Jackson, Avoiding Powers in Bankruptcy, 36 Stanford L.Rev. 725 (1984). If Harvester's security interest in the reconstructed truck is not perfected, then the trustee has priority under § 544(a). The parties have stipulated that the debtors' pre-petition balance on their obligation to Harvester exceeds the value of the truck. Since the debtors have no equity in the vehicle, 11 U.S.C. § 362(d)(2), the only question before us is whether the creditor succeeded in perfecting a security interest in this second vehicle, either when it filed originally on September 7, 1984 or when it filed for a new certificate of title on February 1, 1985. As the trustee has conceded, if Harvester perfected its security interest, then it is entitled to relief from the stay.

*The Original Application*

"Each thing is what it is," said the poet T.S. Eliot, "and not some other thing." Harvester takes the position that its security interest in the original truck, duly perfected on September 7, 1984, encompasses the reconstructed truck. This truck, consistent with the later substitution agreement, is nothing more than a replacement, repair, or accession to the original. The trustee responds that the truck the creditor wishes to foreclose on is neither the selfsame vehicle nor a replacement, but an essentially different vehicle.

Mercifully, we need not grapple with a metaphysical problem of identity and difference. The Vermont Motor Vehicle Certificate of Title and Anti-Theft Act resolves the question of when a truck is so altered as to constitute a new and different vehicle by requiring the Commissioner of Motor Vehicles to verify the vehicle identification number before issuing a certificate of title, 23 V.S.A. §§ 2016, 2093. As Professor Grant Gilmore observed in his great treatise, "[u]nder the act the title to a vehicle seems to be locked up in the certificate in much the same way that title to goods covered by a document of title is locked up in the document." 1 Gilmore, Security Interests in Personal Property, § 20.5 at 566 (1965). We hold that in Vermont a security interest in a vehicle covers the particular vehicle whose identification number is correctly indicated on the certificate of title for which the lienholder applied to the Commissioner of Motor Vehicles. On September 7, 1984, Harvester perfected a security interest in a truck with the vehicle identification number 2HSVDJXRXECA14065 and any substituted, repaired, or accessioned vehicle with this number. The identification number on the certificate of title for the truck that Harvester now claims, however, is 2HTVH0000ECA11763. The creditor evidently acted on this distinction in trying to perfect a security interest in the second vehicle by applying to the Commissioner of Motor Vehicles for a new certificate of title on February 1, 1985.

In the alternative, Harvester argues that because the components salvaged from the original truck have been so assembled in the reconstructed truck that their identity is lost, its security interest continues in this truck under 9A V.S.A.

§ 9–315(1)(a). Harvester's argument assumes what is nowhere stipulated, namely, that the salvaged parts used in the glider kit cannot be identified. Indeed, the creditor himself has listed the components incorporated into the second vehicle: "the engine, transmission, rear axle, front axle, steering mechanism, and brake mechanism" (Harvester's Trial Memorandum at 4). Nor does the creditor have the benefit of a security interest in the installed components as accessions under 9A V.S.A. § 9–314(1). Such an interest is subordinate to "a creditor with a lien on the whole subsequently obtained by judicial proceedings" under 9A V.S.A. § 9–314(3)(b), precisely the position of the trustee. Whether Harvester has a perfected security interest in the reconstructed truck depends on whether it perfected by delivering a proper application for a certificate of title to this truck on February 1, 1985, despite the clerk's having omitted Harvester as a lienholder on the title.

*The Second Application*

In Vermont, the perfection of a security interest in a motor vehicle is governed both by the Uniform Commercial Code and by the motor vehicle title act, read in pari materia. The pertinent provisions of Vermont's Uniform Commercial Code state:

> (3) The filing provisions of this article do not apply to a security interest in property subject a statute
>
> > (a) ...
> >
> > (b) of this state which provides for central filing of security interests in such property, or in a motor vehicle which is not inventory held for sale for which a certificate of title is required under the statutes of this state if a notation of such a security interest can be indicated by a public official on a certificate or a duplicate thereof.
>
> (4) A security interest in property covered by a statute described in subsection (3) can be perfected only by registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official.

9A V.S.A. § 9–302(3)(b) and (4). Such a statute is the Vermont Motor Vehicle Certificate of Title and Anti-Theft Act, which provides:

> (a) Unless excepted by section 2041 [not applicable here], a security interest in a vehicle of a type for which a certificate of title is required is not valid against creditors of the owner or subsequent transferees or lienholders of the vehicle unless perfected as provided in this subchapter.
>
> (b) A security interest is perfected by the *delivery* to the commissioner of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the date of his security agreement and the required fee. It is perfected as of the time of its creation if delivery is completed within twenty days thereafter, otherwise as of the time of the delivery.

23 V.S.A. § 2042(a) and (b) (emphasis supplied). The Act expressly states that compliance with § 2042 is the exclusive means of perfecting a security interest in a motor vehicle:

> The method provided in this subchapter of perfecting and giving notice of security interests subject to this subchapter is exclusive. Security interests subject to this subchapter are hereby exempted from the provisions of law which otherwise require or relate to the filing of instruments creating or evidencing security interests.

23 V.S.A. § 2047. The statute also requires that:

> (a) Each certificate of title issued by the commissioner shall contain:
>
> > (3) The names and addresses of any lienholders, in the order of priority as shown on the application or, if the application is based on a certificate of title, as shown on the certificate ...

23 V.S.A. § 2018(a)(3). The commissioner must mail the certificate of title to the first lienholder, 23 V.S.A. § 2019.

On February 1, 1985, Harvester delivered to the Department of Motor Vehicles the filing fee and an application for a certificate of title for the reconstructed truck indicating its name and address and the date of the security agreement, as required by 23 V.S.A. § 2042(b). Unfortunately, the clerk at Motor Vehicles neglected to note the creditor's lien on the certificate of title. As a result, the certificate of title for the truck now at issue was mailed to the debtors rather than to Harvester. Neither the debtors nor the creditor recognized the mistake. The trustee contends that the absence of a notation of Harvester's lien on the title means that future buyers or creditors would not learn of the encumbrance and, consequently, that the creditor's security interest in the second truck was never perfected. The failure to comply with 23 V.S.A. § 2018(a)(3), the trustee believes, defeats the underlying purpose of the Act to furnish constructive notice and renders Harvester's claim subordinate to the trustee's.

The provisions of the Vermont Motor Vehicle Certificate of Title and Anti-Theft Act governing the perfection of a security interest in a motor vehicle, 23 V.S.A. § 2042(a) and (b), are essentially identical to § 20(a) and (b) of the Uniform Motor Vehicle Certificate of Title and Anti-Theft Act promulgated in 1955 by the National Conference of Commissioners on Uniform State Laws.[1] As in Vermont, the Uniform Act requires a lienholder to submit an application to the Department of Motor Vehicles. The Department must then issue a certificate of title indicating the encumbrances and return the certificate to the first lienholder. As Professor Gilmore notes in discussing the Uniform Act:

> Under § 20(b) the time of perfection is the time of delivery of the lienholder's application to the Department. The § 20(b) provision appears to be satisfied if the application contains the lienholder's name and address, the date of his security agreement, and the required fee . . . . . . The only reasonable construction of the provision is that perfection depends on filing of an application which is proper in all respects and which must in any event contain the information about the security agreement specifically referred to. The date selected is that of "delivery" of the application.

1 Gilmore, Security Interests in Personal Property, § 20.5 at 567 (1965).

One writer has surveyed the three prevailing schemes for using Certificate of Title statutes to perfect security interests in vehicles, the "indication," "delivery," and "dual" schemes:

> Presently, twenty-two states and the District of Columbia have enacted certificate of title systems that make the perfection event either the indication of the lien on the certificate of title or the issuance of the certificate of title after indication. Twenty-four states have certificate of title laws that make mere delivery of the appropriate papers and fees to the proper officer the act of perfection, even if the certificate of title is never noted or issued. . . . Finally, three states have "dual system" certificate of title perfection laws that require both the filing of a financing statement and the use of the certificate of title.

Note, Secured Transactions: Certificate of Title—Delivery or Notation? The Lender's Dilemma, 37 Okla.L.Rev. 618, 622 (1984) (footnotes omitted). See also 1C Coogan, Hogan, Vagts, Secured Transactions Under U.C.C., § 30A.07[6] (1980). Vermont, like twenty-three other states, is a "delivery" jurisdiction. Like the Uniform Act, 23 V.S.A. § 2042(b) does not require a creditor to ensure that its lien is indicated on the certificate of title in order to perfect. Under Vermont law, "[t]he title application

---

**1.** The departures from the Uniform Act are not significant. Beside changing the numbering, Vermont substituted the "commissioner" of motor vehicles for the "Department" and, in 1979, amended § 2042(b) to allow twenty rather than ten days to deliver the application in order for perfection to relate back to the time the security interest was created.

alone satisfies the requirement for perfection of a security interest in a motor vehicle." *General Motors Acceptance Corporation v. Lefevre*, 38 B.R. 980, 983 (Dist. Ct.D.Vt.1983), affirming 27 B.R. 40 (Bkrtcy.D.Vt.).

The trustee refers the Court to *In re York*, 43 B.R. 36 (Bkrtcy.M.D.Tenn.1984), for the proposition that, if a creditor filed a proper application for a certificate of title but the Department of Motor Vehicles never noted the lien on the title, the creditor is not perfected. Tennessee, however, is an "indication" state, for "Tennessee law requires both filing and notation." *In re York* at 39. Decisions interpreting certificate of title acts that expressly require "filing and notation of the lien or encumbrance upon the certificate of title," Tenn. Code Ann. § 55–3–126(a) (1980), have no bearing on interpreting 23 V.S.A. § 2042(b). Compare, e.g., *In re DeSchamp*, 44 B.R. 517 (Bkrtcy.N.D.Iowa 1984) (creditor that failed to note its lien on the title not perfected under Iowa statute that requires "indication of a security interest on a certificate of title"); *In re Corsica Enterprises, Inc.*, 40 B.R. 769 (Bkrtcy.D.S. D.1984) (debtor's failure to disclose creditor's liens when registering vehicles under "indication" statute renders creditor unperfected as against trustee); *First National Bank of Arizona v. Carbajal*, 132 Ariz. 263, 645 P.2d 778 (Ariz.S.Ct.1982) (failure to comply with Arizona statute that "requires indication" of security interest on a certificate of title leaves creditor unperfected).

The trustee also cites *Milwaukee Mack Sales, Inc. v. First Wisconsin National Bank of Milwaukee*, 93 Wis.2d 589, 287 N.W.2d 708 (Wis.S.Ct.1980). Wisconsin is a "delivery" jurisdiction that requires the lienholder to submit an application and a Notice of Security Interest Perfection in order to be perfected. In this case, before submitting an application prepared by the seller, the debtor removed the Notice of Security Interest Perfection. The Court held:

> Thus, the fact that the seller's efforts to perfect its security interest were frustrated by the debtor's fraudulent removal of the Notice of Security Interest Perfection cannot operate to relieve the seller of its own negligence in failing to carry out the filing with the Motor Vehicle Department that is required by statute.

*Milwaukee Mack Sales*, 287 N.W.2d at 712. This decision hardly supports the trustee's position, however, for the seller failed to perfect only because no complete application was ever delivered to the Department of Motor Vehicles. Had Harvester's application similarly lacked information required by 23 V.S.A. § 2042(b), as concededly it did not, Harvester too would not have been perfected. *In re The Chief Freight Lines*, 37 B.R. 436 (Bkrtcy.N.D.Okl.1984), which the trustee also relies on, stands for the same proposition. Under Oklahoma law, "mere delivery of the correct papers to the correct state office constitutes perfection," *id.* at 439. The creditors depended on the debtor to submit the statutorily required lien entry form and entry fee to the Motor Vehicle Division. Because of the erroneous advice of a state tag agent, the debtor filed neither the form nor the fee. The creditors failed to perfect because they "did not effect 'delivery' of the required documents to the tag agent," *id.* at 440. In contrast, the Court cited:

> *McMillin v. First National Bank & Trust (In re Fowler)*, 407 F.Supp. 799, 803 (W.D.Okl.1975), which held that the mistake of a state official charged with administering procedure does not defeat a creditor's secured interest as long as the creditor's conduct did not lead to the filing officer's error.

*Supra.* The Oklahoma Court went on to distinguish the facts in *Fowler*, which are much like the facts before this Court, since the filing clerk in *Fowler* received a proper application but wrongly indexed the forms. Both decisions, *Milwaukee Mack Sales* and *The Chief Freight Lines Company*, require as a condition of perfection that the application a lienholder delivers to the Department of Motor Vehicles be complete and proper in all respects, as indeed Har-

vester's application on February 1, 1985 was. Compare *General Finance Corporation v. Hester*, 141 Ga.App. 28, 232 S.E.2d 375 (Ga.Ct.App.1977) (when creditor failed to submit properly signed documents to Motor Vehicle Department, which returned the application, creditor was not perfected).

*In re Covey*, 470 F.Supp. 1048 (D.Vt. 1979), cited by the trustee, presents the very converse of the instant case. In *Covey* the bank took a lien on the debtor's real property to secure the purchase of a truck. The seller mistakenly listed the bank as a first lienholder on the application for the certificate of title. Three months later, the debtor gave the bank a second promissory note and substituted for the mortgage a security agreement on the truck. The bank failed to apply to the Department of Motor Vehicles for a certificate of title based on the substituted security agreement. Judge Holden found that, despite the erroneous indication of the bank's lien on the certificate of title, the bank had not perfected its security interest in the truck because when the certificate was issued no security agreement covering the vehicle existed. Thus, even though the bank was identified as a lienholder on the title, the Court held that "the interest was never perfected within the provisions of the statute [23 VSA § 2042] for the reason that no application concerning the newly created lien was ever delivered to the commissioner." *Covey* at 1050. Compare *In re Corsi*, 24 U.C.C.Rep.Serv. 216 (Bkrtcy.D.Vt.1978) (a security interest must in fact exist; certificate of title standing alone is not sufficient to create a security interest).

Decisions from "delivery" jurisdictions addressing the failure of the Department of Motor Vehicles to perform the ministerial act of indicating a lienholder on the certificate of title have generally held that a security interest in a vehicle is perfected once the creditor has presented a proper application. A clerk's erroneous omission of the lienholder's name on the certificate of title will not defeat the perfection of the lien. *McMillin v. First National Bank and Trust*, 407 F.Supp. 799 (W.D.Okl.

1975); *In re Lovell*, 36 B.R. 777 (Bkrtcy.E. D.Pa.1984); *T & O Mobile Homes, Inc. v. United California Bank*, 38 U.C.C.Rep. Serv. 1034 (Calif.App.Ct.1984) (hearing granted); *Liberty National Bank & Trust Company of Oklahoma City v. Garcia*, 686 P.2d 303, 38 U.C.C.Rep.Serv. 1040 (Okla.Ct.App.1984).

The cases we have examined to the contrary from states with certificate of title acts that make perfection depend only on delivery of a proper application have held, on considerations of public policy or equity, that a lien that has erroneously not been noted on the title should not prevail over the rights of an innocent third party. *Security National Bank & Trust Co. v. Richardson*, 686 P.2d 293 (Okla.Ct.App. 1984) (holding, for policy reasons, that though lienholder delivered proper application, because no lien was noted on certificate, creditor could not prevail against innocent purchaser). But see Note, Secured Transactions: Certificates of Title—Delivery or Notation? The Lender's Dilemma, 37 Okla.L.Rev. 618 (1984) (criticizing *Security National Bank v. Richardson* because the Oklahoma statute is inconsistent with a requirement that a lien be indicated on the certificate of title as a prerequisite to perfection). Compare *Muir v. Jefferson Credit Corporation*, 108 N.J.Super. 586, 262 A.2d 33 (N.J.Super.Ct.1970) (holding that, though it did not defeat creditor's security interest, creditor who permitted debtor to forge satisfaction of lien on certificate of title was estopped from asserting rights against innocent third parties).

■ We decline to follow this path. However this Court might regard the wisdom of a statutory scheme that permits a creditor to perfect a security interest in a vehicle when its lien is not indicated on the certificate of title, we shall not modify the plain meaning of the controlling statute. The underlying policy considerations have already been resolved by the Vermont legislature. Therefore, we hold that a lienholder who has fully complied with 23

V.S.A. § 2042 and who has not contributed to the erroneous omission of the lien on the certificate of title enjoys a perfected security interest in the titled vehicle as against a trustee in bankruptcy.

The judgment that the burden of a clerical error should not fall on the filing creditor is also reflected in § 9–403(1) of the Uniform Commercial Code and in the comments under § 9–407(1), which indicate that:

> Note, however, that under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

See *In re Air Vermont,* 45 B.R. 817, 819 (Dist.Ct.D.Vt.1984) (even though clerk inadvertently failed to file the financing statement, creditor perfected under § 9–403(1) when filing officer accepted the statement); *In re Air Vermont,* 40 B.R. 323, 334 (Bkrtcy.D.Vt.1984) ("secured party does not bear the risk that the filing officer will not properly perform his duties"). Similarly, in a recent decision holding that a real estate attachment improperly indexed by a city clerk is valid against a bona fide purchaser without actual notice of the attachment, a majority of the Vermont Supreme Court declared that "for over a century, it has been the law of Vermont that the proper recording of an instrument has served as constructive notice to the public, notwithstanding clerical errors in indexing." *Haner v. Bruce, et al.,* —— Vt. ——, 499 A.2d 792, 793 (1985).

Accordingly, we grant Harvester's motion and hereby ORDER that the stay be lifted to permit Harvester to repossess one 1985 rebuilt tractor, model 4370E420, vehicle identification number 2HTVH0000-ECA11763, the subject of its motion.