100 F.3d 482
 UNITED STATES of America, Plaintiff-Appellee,
v.
Elving J. KJELLSTROM, Marjorie Kjellstrom, Douglas R. Kjellstrom, Sharon L. Kjellstrom, Gary Kjellstrom, Renee Kjellstrom, Randy E. Kjellstrom, Jane M. Kjellstrom and Dennis L. Kjellstrom, Defendants-Appellants.
 No. 96-1584
 United States Court of Appeals,
Seventh Circuit
 Argued September 27, 1996
Decided November 8, 1996
 
 Appeal from the United States District Court for the Western District of Wisconsin, No. 95-C-91, Barbara B. Crabb, Judge.
 Richard Farber, Gary R. Allen, Frank P. Cihlar, argued, Dept. of Justice, Tax Div., Appellate Section, Rachel I. Wollitzer, Dept. of Justice, Tax Div., Washington, DC, for U.S.
 James F. Gebhart, argued, Stroud, Stroud, Willink, Thompson & Howard, Madison, WI, for Elving J. Kjellstrom, Marjorie Kjellstrom, Douglas R. Kjellstrom, Sharon L. Kjellstrom, Gary Kjellstrom, Renee Kjellstrom, Randy E. Kjellstrom, Jane M. Kjellstrom and Dennis L. Kjellstrom.
 Before CUMMINGS, EASTERBROOK and EVANS, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 In this action the government seeks to recover income taxes and interest that it had refunded to defendant members of the Kjellstrom family. Defendants are shareholders or spouses of shareholders in Wisco Industries, Inc., a corporation which elected to be taxed under the provisions of subchapter S of the Internal Revenue Code of 1986 (26 U.S.C. secs. 1361-1379). Under those provisions, a corporation's income or loss (as well as deductions and credits) passes through and is taxed pro rata to the shareholders rather than to the corporation. The Internal Revenue Service (IRS) issued refunds to taxpayers for tax year 1989 after they filed amended income tax returns claiming their pro rata share of investment tax credits that allegedly passed through from Wisco's amended subchapter S corporation return for that year. Taxpayers also filed amended returns for tax year 1990 again seeking refunds reflecting their pro rata share of Wisco's investment tax credit. The IRS did not allow any of the refunds except for one to Douglas and Sharon Kjellstrom. Subsequently, the IRS advised all taxpayers that all refunds had been issued erroneously and demanded return of the refunds. Taxpayers refused, resulting in this action. After the government brought this suit, those taxpayers that had been denied refunds for 1990 counterclaimed for them. Both sides moved for summary judgment in the district court. The district court granted the government's motion and denied taxpayers' motion. 916 F. Supp. 902 (W.D. Wis. 1996). A final judgment of $51,346 in income taxes, plus interest, was awarded to the government. We affirm.
 
 
 2
 Wisco is a Wisconsin corporation owned by Elving and Marjorie Kjellstrom and their four sons. Elving is the chief executive officer and his sons hold various positions within the company. Wisco manufactures and sells contract metal stamping and metal stamping for original equipment manufacturers and fast food equipment. Its offices are located in Oregon, Wisconsin. It has a separate assembly plant three miles from its headquarters and has one other facility in Cullman, Alabama. Wisco executed the lease for the Oregon building in July 1974. The lessor is Elving Kjellstrom, the owner of the building.
 
 
 3
 Two hundred thirty Wisco employees are located in the Oregon facility and 30 others are employed in Cullman, Alabama. Wisco does not own or lease space in any buildings outside the United States. Its manufacturing operations and employees are all located in this country. In 1989 and 1990, only a small percentage of its sales were to companies outside the United States or to companies within the United States that sold Wisco's products to foreign companies.
 
 
 4
 Wisco elected to be treated as a subchapter S corporation for federal income tax purposes and is not subject to income tax. However, its shareholders must report their pro rata shares of Wisco's income, loss, deductions or credits on their own income tax returns. Neither Wisco nor its shareholders included the investment tax credits now claimed on the original returns they filed with the Internal Revenue Service for 1989 and 1990. However, in September 1992 Wisco filed an amended 1989 S corporation federal income tax return claiming an additional $42,479 investment tax credit. It identified certain computer equipment and information systems as property upon which the claimed tax credit was based. Taxpayers amended their individual income tax returns to reflect their pro rata shares of the additional investment tax credit claimed in the amended 1989 corporate return. Thereafter checks were sent to them in March and April 1993.
 
 
 5
 Wisco also filed an amended S corporation federal income tax return for 1990 claiming an additional $15,085 investment tax credit not previously claimed. All taxpayers amended their income tax returns to claim their pro rata shares of this amount. With one exception, the Internal Revenue Service did not allow any of the refunds claimed by taxpayers.
 
 
 6
 In November 1993 and August 1995, the Internal Revenue Service sent letters to the taxpayers advising that the refund checks had been issued erroneously and demanding return. After the taxpayers refused to return the refunds, the government sued to recover them.
 
 
 7
 Taxpayers filed protests with the Internal Revenue Service in January 1995 for the 1990 refunds that had been denied, and in August 1995 the Internal Revenue Service disallowed those claims, causing defendants to file counterclaims for refunds.
 
 
 8
 In the court below, both sides moved for summary judgment. Taxpayers contended that the "world headquarters" transitional rule of Section 204(a)(7) of the 1986 Tax Reform Act applied to Wisco so that it was entitled to the investment tax credits it had claimed on its amended returns for 1989 and 1990. However, the district court concluded that the transitional rule did not apply so that summary judgment was granted to the government. The gravamen of the ruling was that Section 204(a)(7) "was intended to benefit Merrill Lynch and possibly other companies that entered into an agreement to lease newly constructed world headquarters prior to September 26, 1985." 916 F. Supp. at 907.
 
 Discussion
 
 9
 Section 204(a)(7) of the Tax Reform Act of 1986, Pub. L. 99-514 sec. 204(a)(7), 100 Stat. 2085, 2155, is the controlling statute[1] and provides as follows:
 
 
 10
 The amendments made by section 201 shall not apply to any reasonable leasehold improvements, equipment and furnishings placed in service by a lessee or its affiliates if--
 
 
 11
 (A) the lessee or an affiliate is the original lessee of each building in which such property is to be used,
 
 
 12
 (B) such lessee is obligated to lease the building under an agreement to lease entered into before September 26, 1985, and such property is provided for such building, and
 
 
 13
 (C) such buildings are to serve as world headquarters of the lessee and its affiliates.
 
 
 14
 We conclude that relief under the statute is unjustified for various reasons.
 
 
 15
 First of all, the relief provided under sec. 204(a)(7) only applies to buildings serving as "world headquarters of the lessee and its affiliates." The Tax Reform Act of 1986 does not define the expression "world headquarters"; therefore, we employ the "fundamental canon of statutory construction . . . that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common-meaning." Perrin v. United States, 444 U.S. 37, 42. While Wisco's Oregon offices apparently constitute its headquarters, they are not "world headquarters" as that expression is ordinarily or commonly understood. Implicit in the expression "world headquarters" is the premise that there are other "headquarters." Indeed, in its common sense, the term conveys the notion that the other corporate headquarters are subordinate in some fashion to the world headquarters which stands at the apex of the corporate hierarchy. In Wisco's case there are no other headquarters of any sort, subordinate or otherwise, within the United States or abroad. Accordingly, Wisco's Oregon offices cannot constitute "world headquarters" as that term is commonly understood. Wisco's claim to investment credit under sec. 204(a)(7) fails for a related reason. The provision applies to buildings serving as "world headquarters of the lessee and its affiliates." Just as Wisco has no other headquarters, Wisco has no affiliates and therefore cannot qualify.
 
 
 16
 Unlike the district court, we do not hold that the statute was possibly limited to the securities firm of Merrill Lynch and Company.[2] It was meant to give relief also to comparable companies but Wisco is not such. Because Wisco has no affiliates and its Oregon offices do not constitute "world headquarters," it is plain that Wisco is not entitled to the investment tax credit. Accordingly we need not reach any of the government's additional contentions.
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Section 211 of the Tax Reform Act of 1986 repealed the regular investment tax credit. Pub. L. 99-514 sec. 211(a), 100 Stat. at 2166. However, certain "transition property" was excepted. Id. sec. 211(b)(1), 100 Stat. at 2166. The transition property exception applied only to certain property placed in service after December 31, 1985, and to which the provisions of Section 201 of the Act do not apply. Id. sec. 211(e)(1), 100 Stat. at 2167-2168. Section 201 sets forth depreciation rules and is not relevant here. What is important for present purposes is the interpretation of Section 204(a)(7), which excepts certain leasehold improvements from application of Section 201. Id. sec. 204(a)(7), 100 Stat. at 2155
 
 
 [2]
 Likewise the Government does not attempt to restrict relief to Merrill Lynch. See also Airborne Freight Corp. v. United States, 1996 U.S. Dist. LEXIS 12902 (W.D. Wash. 1996)