**In re Freddie E. JARVIS, Amber T. Jarvis, Debtors.**

**Bankruptcy No. 99–41179.**

United States Bankruptcy Court, S.D. Illinois.

Nov. 29, 1999.

Mark Ballard, Mt. Vernon, IL, for movant.

**174**

Michelle L. Vieira, Murphysboro, IL, for respondent.

William E. Wells, Marion, IL, for debtors.

## OPINION

KENNETH L. MEYERS, Bankruptcy Judge.

At issue in this case is whether the mailing of an application for title on the debtor's motor vehicle constituted "delivery" of such application to the Illinois Secretary of State so as to effect perfection of a lien on that vehicle under the lien perfection provision of the Illinois Vehicle Code. *See* 625 Ill.Comp.Stat. 5/3–202.

Civitas Bank ("bank") seeks relief from stay to repossess the vehicle of Amber Jarvis ("debtor"), asserting that it holds a perfected lien on the vehicle. The Chapter 7 trustee objects, maintaining that the bank's lien was not perfected within the 20–day grace period for perfecting such a lien to prevent its avoidance as a preference, *see* 11 U.S.C. § 547(c)(3)(B), because the title application was mailed on the last day of that period but was not received or "delivered" until after the period had expired. As a result, the trustee contends, the bank's lien is avoidable as a preference and its motion for relief from stay should be denied.

The facts are undisputed. On May 5, 1999, the debtor purchased a vehicle from Marion Ford–Mercury, Inc. ("dealership"),

and signed a retail installment contract granting the bank a security interest in the vehicle. Twenty days later, on May 25, 1999, the dealership mailed a title application showing the bank as lienholder to the Illinois Secretary of State. The application was received by the Secretary of State's office on May 28, 1999, twenty-three days after the debtor's purchase, and title was subsequently issued indicating the bank's lien. Less than a month later, on June 16, 1999, the debtor filed her Chapter 7 bankruptcy case.

Under § 547 of the Bankruptcy Code, the trustee may avoid as a preferential transfer a lien that is perfected within 90 days of bankruptcy.[1] Section 547(c)(3)(B) provides an exception to such avoidance for a lien that is "given to enable the debtor to acquire ... property" if, among other things, the creditor perfects its lien "on or before 20 days after the debtor receives possession of such property." 11 U.S.C. § 547(c)(3)(B). The time within which a creditor must perfect its lien in order to invoke this "enabling loan" exception is governed by federal, not state, law and may not be extended by compliance with a longer state law "relation back" provision.[2] *See Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 213 & n. 1, 118 S.Ct. 651, 652–53 & n. 1, 139 L.Ed.2d 571 (1998). What constitutes perfection, however, is defined by state law, and resort must be had to the applicable state statute to determine whether the

---

1. Section 547 authorizes the trustee to avoid a transfer of the debtor's interest in property that is
   (1) to or for the benefit of a creditor;
   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   (3) made while the debtor was insolvent;
   (4) made—
      (A) on or within 90 days before the date of the filing of the petition; [and]
   (5) that enables such creditor to receive more than such creditor would [have received in a Chapter 7 liquidation case if such transfer had not been made].
   11 U.S.C. § 547(b).

2. In *Fink*, the creditor perfected its lien on the debtor's vehicle outside the 20–day period of § 547(c)(3)(B) but within 30 days of the debtor's purchase. The creditor argued that its perfection was timely under a Missouri statute that treated a lien on a motor vehicle as having been "perfected" on the date of its creation if the creditor filed the necessary documents within 30 days after the debtor took possession. *See* Mo.Rev.Stat. § 301.600(2). The Supreme Court rejected this contention and ruled that the creditor had not perfected within the required time to invoke the "enabling loan" provision of § 547(c)(3)(B). *Fink*, 118 S.Ct. at 656.

acts necessary to accomplish perfection have been completed within the 20–day time limit of § 547(c)(3)(B). *Id.*

In Illinois, the method for perfecting a security interest in a motor vehicle is set forth in § 3–202 of the Illinois Vehicle Code.[3] Subsection (b) of that section provides:

> A security interest [in a motor vehicle] is perfected *by the delivery to* the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. It is perfected as of the time of its creation *if the delivery is completed* within 21 days thereafter, otherwise *at the time of the delivery.*

625 Ill.Comp.Stat. 5/3–202(b) (West 1999) (emphasis added).

As can be seen, the operative act required for perfection of a motor vehicle lien under § 3–202(b) is "delivery" of the appropriate documents to the Secretary of State. Unfortunately, the statute does not define "delivery" or specify when delivery takes place for purposes of lien perfection. In this case, the bank argues that its mailing of the title application was sufficient to constitute "delivery" to the Secretary of State because, in mailing the application, it did everything it could to perfect its lien and, as a result, the documentation was no longer in its possession but had been irretrievably forwarded to the Secretary of State. In addition, the bank asserts, the fact that the title application had been placed in the mail meant that such documentation was inaccessible to any other lender and, therefore, the statutory object of assuring priority of its lien had been met.

The bank cites no authority to support its position that mailing is sufficient to fulfill the "delivery" requirement of § 3–

202(b). The trustee, while arguing that "delivery" requires actual receipt, likewise provides no supporting case law, and the Court, in its own research, has found no Illinois case that addresses what in its own research, has found no Illinois case that addresses what constitutes "delivery" sufficient to perfect a motor vehicle lien under § 3–202(b) of the Illinois Vehicle Code.

It is the primary goal of all statutory construction to ascertain and carry out the legislature's intent, and, when the language of the statute is clear, a court must give effect to that language as enacted. *See In re McLaren,* 227 B.R. 810, 811 (Bankr.S.D.Ill.1998). When, however, the statutory language is ambiguous or subject to more than one interpretation, the court must look to other sources for aid in determining legislative intent, including the legislative history of the statute, the reason for its enactment, and the ends the legislature wished to achieve. *Id.*

Unless otherwise defined, statutory terms are to be given their ordinary and commonly understood meaning. *See United States v. Kjellstrom,* 100 F.3d 482, 484 (7th Cir.1996). In this case, the term "delivery," when used in a legal context, may refer to either "actual delivery," which indicates receipt by the intended transferee, or "constructive delivery," which, although not conferring actual possession, consists of those acts that have been held to be equivalent to acts of real delivery. *See* Black's Law Dictionary 428 (6th ed.1990). Because of these varying meanings of "delivery," § 3–202(b) is ambiguous and subject to more than one interpretation concerning what is required to perfect a motor vehicle lien. The Court, accordingly, must look beyond the wording of the statute for aid in determining legislative intent on this issue.

---

**3.** Security interests in motor vehicles are specifically exempted from the filing provisions of the Illinois Uniform Commercial Code, and the Illinois Vehicle Code provides the exclusive means of perfecting such security interests. *See* 625 Ill.Comp.Stat. 5/3–207; 810 Ill.Comp.Stat. 5/9–203(4); *Huber Pontiac, Inc. v. Wells,* 59 Ill.App.3d 14, 16 Ill.Dec. 518, 521, 375 N.E.2d 149, 152 (1978).

The legislative history of § 3–202, which was initially enacted as part of Illinois' Motor Vehicle Law of 1957, shows that it was based on a comparable provision of the Uniform Vehicle Code prepared by the National Committee of Uniform Traffic Laws and Ordinances. *See* 625 Ill.Comp. Stat.Ann. 5/3–202, at 190 (West 1993).[4] By adopting the language of the Uniform Vehicle Code, the Illinois legislators hoped "to bring certainty to the law" regarding the rights of lienholders and purchasers and "thereby aid in the commercial transferability of motor vehicles." *Id.* Other states have similarly enacted lien perfection statutes based on the Uniform Vehicle Code, many with provisions that, like § 3–202(b), make "delivery" of appropriate documents and fees the act of perfection.[5] *See* Note, *Secured Transactions: Certificate of Title—Delivery or Notation? The Lender's Dilemma,* 37 Okla.L.Rev. 618, 622 (1984); *In re Gilbert,* 82 B.R. 456, 458–60 (Bankr.E.D.Mich.1988).

A federal court seeking to interpret terms dependent on state law may, in the absence of controlling precedent from the state's own courts, "consider relevant authority of other jurisdictions that have addressed the issue." *Erie Ins. Group v. Sear Corp.,* 102 F.3d 889, 892 (7th Cir. 1996). Given the dearth of Illinois case law addressing what constitutes "delivery" under § 3–202(b) and given the similarity of certificate of title statutes in other states, this Court finds it appropriate to consider decisions from non-Illinois jurisdictions for persuasive authority on the issue of whether mailing is sufficient "delivery" to effect perfection under § 3–202(b).

In a decision applying Missouri law, the court in *In re Ross,* 193 B.R. 902 (Bankr. W.D.Mo.1996), construed a statute virtually identical to § 3–202(b) to determine whether the mailing of title documents on a motor vehicle constituted "delivery" for purposes of lien perfection.[6] The court rejected the creditor's contention that delivery was completed, and the creditor's lien perfected, on the date the title application was mailed. Rather, the court stated, "under [the Missouri statute] the Department of Revenue must actually receive the application before it considers the delivery process to be complete." *Ross,* 193 B.R. at 906. Thus, the time of perfection "is determined by the date the Department of Revenue receives the application, and not the date of mailing." *Id.*

In so ruling, the *Ross* court relied on a decision from the Missouri state courts, *Ford Motor Credit Co. v. Pedersen,* 575 S.W.2d 916 (Mo.Ct.App.1978), in which the creditor's lien was not recorded on the vehicle's certificate of title due to an error in the director of revenue's office, even though the creditor had properly filed the title application form. The court held that the creditor's lien was perfected despite the lack of notation on the certificate of title because, by delivering the documents

---

4. In 1970, the legislature consolidated and recodified various earlier laws and acts, including the Motor Vehicle Law of 1957, and enacted them as the present Illinois Vehicle Code. *See* 625 Ill.Comp.Stat.Ann. 5/3–100 *et seq.,* at 145–46 (1993).

5. Still other states' statutes specify the perfection event as the issuance of a certificate of title with the creditor's lien noted or, in a few instances, require both the filing of a financing statement and notation on the certificate of title. *See* Note, *Secured Transactions,* 37 Okla.L.Rev. at 622.

6. The Missouri statute at issue in *Ross* provided:

A lien or encumbrance on a motor vehicle is perfected *by the delivery to* the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected at the time of its creation *if the delivery* of the aforesaid to the director of revenue *is completed* within thirty days thereafter, otherwise *at the time of the delivery.*

Mo.Rev.Stat. § 301.600.2 (1999) (emphasis added).

to the director, the creditor did everything required of it to assure that its lien rights were perfected in accordance with the statute. Although not directly addressing the issue of mailing as delivery, the *Pedersen* court specifically found that the date of perfection was the date "the requisite documents were *delivered to and received by* the director of revenue." 575 S.W.2d at 919 (emphasis added). Thus, the court equated "delivery" with "receipt," negating any implication that delivery occurs at the time of mailing.

This interpretation of "delivery" as "actual receipt" is reflected, albeit without comment, in decisions from other states with statutes specifying "delivery" as the act of perfection. In a survey of cases from so-called "delivery" jurisdictions, the court in *In re Farnham*, 57 B.R. 241 (Bankr.D.Vt.1986), characterized "delivery" as occurring, for example, when the title application was "filed," "submitted," "received," "presented," or "accepted." None of these terms is consistent with the concept of "mailing as delivery," and, in fact, the Court's own survey has revealed no case in which the mere mailing of an application showing the creditor's lien was considered sufficient for "delivery."

Moreover, commentators noting the absence from the Uniform Vehicle Act of any definition of "delivery" have concluded that the most logical way of interpreting this term is "by analogizing to [Uniform Commercial Code] § 9–403(1)," which defines "filing" as occurring upon "presentation" of the requisite items to the filing officer.[7] *Secured Transactions, supra*, at 627; *see* Comment, *Four Laws in Thirteen Months: Perfecting a Security Interest in Oklahoma Vehicles*, 14 Tulsa L.J. 770, 786 n. 97 (1979); *see also* 1 Gilmore, *Security Interests in Personal Property*, § 20.5 at

567 (1965) (cited in *Farnham*, 57 B.R. at 245). Thus, they reason, "delivery under [a] certificate [of title] statute should be deemed complete when the forms and fee *are placed in the possession of* the [designated official]." *Secured Transactions, supra* (emphasis added). While neither these commentators nor the courts surveyed in *Farnham* expressly considered whether mailing was sufficient for delivery, their characterizations of "delivery" corroborate the holding of *Ross* that actual receipt is required.

The *Ross* court further observed that to allow the date of perfection to be determined by the date of mailing would defeat the statutory purpose of "'provid[ing] a simple system of perfecting liens [that] would protect lienholders holding security interests while at the same time affording adequate notice of the lien to the public, including subsequent transferees and lienholders.'" *Ross*, 193 B.R. at 906 (quoting *In re Jackson*, 268 F.Supp. 434, 441 (E.D.Mo.1967)). To employ a presumption that mailing is sufficient to satisfy the delivery requirement, the court continued, would be inappropriate given the object of determining the precise date and time of perfection in a priority contest between two secured creditors. *Ross*, at 906. Rather, the court stated, "[i]t is more sensible to resolve priority conflicts based on the date and time the lien applications are received by the appropriate agency," and this requirement would serve the additional legislative purpose of providing public notice of the lien.[8] *Id*.

██ This Court agrees with the reasoning of *Ross* and finds that the "delivery" requirement of the comparable Illinois statute, § 3–202(b) of the Illinois Vehicle Code, is fulfilled only when the Secretary

---

7. Section 9–403(1) of the Illinois Uniform Commercial Code states:
   Presentation for filing of a financing statement and tender of the filing fee or acceptance of the statement by the filing officer constitutes filing under [Article 9].
   810 Ill.Comp.Stat. 5/9–403(1).

8. In a later decision, the bankruptcy court for the Western District of Missouri reaffirmed its holding in *Ross* that delivery occurs not on the date of mailing but on the date of receipt. *See In re Johnson*, 232 B.R. 399, 402 (Bankr. W.D.Mo.1999).

of State actually receives the requisite title documents, not on the date such documents are placed in the mail. To hold otherwise would be contrary to the legislative purpose of the Illinois statute to provide certainty regarding the rights of lienholders and purchasers of motor vehicles. *See* 625 Ill.Comp.Stat. 5/3–202, at 190. Common experience teaches that the mere mailing of a document or payment does not guarantee receipt by the addressee, and a rule that lienholders need show only that a title application was mailed to achieve priority over other claimants would, at best, create administrative difficulties and, at worst, corrupt the process. It is reasonable to assume that the legislature placed the burden of ensuring receipt of title documents on the party whose interest is thereby protected. Accordingly, lienholders who choose to mail rather than physically transport title documents to the Secretary of State must allow enough time for mailing to make sure the documents are received by the desired date.

While the bank in this case asserts that it did "everything it could" to perfect its lien by placing the title documents in the mail, it clearly had the option of hand-delivering the documents to the appropriate official to forestall any question of the timeliness of delivery and the consequent perfection of the bank's lien. Unlike the creditor in *Pedersen*, the failure of the bank to perfect its lien in a timely manner was not due to error by the state official charged with processing title applications but to the bank's failure to timely accomplish its obligation of delivering the documents to the official in question.

█ It was, of course, the dealership and not the bank itself that delayed until the 20th day to mail the title application showing the bank's lien. The bank, however, must bear the consequences of allowing the dealership to act on its behalf. Lenders who rely upon others, whether dealers or borrowers, to file documents that are required to perfect their interest

do so at their own peril. *See In re Thomas*, 231 B.R. 8, 12 (Bankr.W.D.Mich.1999).

█ For the reasons stated, the Court finds that the bank's lien on the debtor's vehicle was not perfected until the title documents were actually received by the Secretary of State's office on May 28, 1999, which was 23 days after the debtor's purchase. Because perfection did not occur within the 20–day grace period of 11 U.S.C. § 547(c)(3)(B), the trustee may avoid the bank's lien as a preference under § 547(b). While the trustee has yet to seek such avoidance, the Court finds that cause does not exist at this time to grant the bank's motion for relief from stay to repossess the debtor's vehicle. *See* 11 U.S.C. § 362(d). Accordingly, the Bank's motion for relief from stay must be denied.