T.C. Memo. 2001-189

UNITED STATES TAX COURT

CHICAGO MERCANTILE EXCHANGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8984-95, 16082-95.          Filed July 24, 2001.

<u>Dennis E. Frisby</u>, for petitioner.

<u>Robert M. Ratchford</u> and <u>Dana E. Hundrieser</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  This case was submitted to the Court without trial under Rule 122.  Respondent determined deficiencies of $1,706,000, $2,725,835, and $444,347 in petitioner's Federal income tax for 1988, 1989, and 1990, respectively.  We must decide whether petitioner is entitled to investment tax credits that it claims under the transition rules contained in section

204(a)(7) of the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, 100 Stat. 2146. We hold it is not. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the subject years. Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

All facts were stipulated and are so found. The stipulations of facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioner is a corporation organized under the Illinois General Not for Profit Corporation Act to operate a commodity exchange in Chicago, Illinois. Its principal place of business is in Chicago, and it did not own any stock in a corporation during the relevant years.

Petitioner primarily provides and regulates a commodity exchange where futures contracts and options on futures contracts are traded. Petitioner also establishes and enforces trading rules, collects and disseminates information about its markets, and provides the clearing mechanism for trades executed on its commodity exchange. Petitioner has no shareholders but is owned by its approximately 2,700 members, approximately 1/4 of which are corporations and the remainder of whom are individuals. Its member's customers who have futures contracts and options traded on its commodity exchange are located worldwide, and it receives a significant portion of its income from foreign subscribers.

In 1981, petitioner approved the construction of a new complex/trading facility, the Chicago Mercantile Exchange Center (CME Center), that would consist of a south tower, a north tower, and two trading floors. On May 11, 1981, petitioner agreed to lease 100,000 square feet on the upper lobby level and the entire 2nd through 6th floors of the south tower. This represented approximately 10 percent of the total space available for lease in the south tower when petitioner took possession of the premises in November 1983. Petitioner's total leased space increased to approximately 17 percent of the south tower space available for lease.

Also in 1981, petitioner became a 10-percent limited partner in a partnership named CME Center Partnership (CCP);[1] the other partner (the general partner) was an entity that was unrelated to petitioner. CCP was formed to construct, own, and operate the CME Center's south tower and to construct and sell its trading facility. CCP owned indirectly the south tower, and a limited partnership unrelated to petitioner owned indirectly the north tower.

In addition to its corporate headquarters in Chicago, petitioner maintained four other offices to promote the use and trading of financial futures contracts. From 1979 through 1990,

---

[1] Petitioner maintained that 10-percent interest until CCP was dissolved in 1995.

petitioner maintained the first office in London, England, with a staff of 3 to 5 employees, including one of petitioner's vice presidents as managing director. From 1987 through 1990, petitioner maintained the second office in Tokyo, Japan, with a staff of 3 or 4 employees, including a managing director who became a vice president of petitioner in 1988. Petitioner maintained the other two offices in New York, New York, and Washington, D.C., with a staff of 2 to 5 employees and 4 to 6 employees, respectively. The New York office also was managed by one of petitioner's vice presidents.

In December 1988, petitioner formed a second limited partnership named P-M-T Limited Partnership (PMT). Petitioner is a 10-percent general partner in PMT, and petitioner's members and clearing house members collectively own the remaining 90-percent interest as limited partners. PMT was formed to create and license a global electronic system for trading futures and options on futures contracts during the non-trading hours of petitioner's commodity exchange.

## Discussion

Before 1986, taxpayers who acquired certain machinery and equipment for use in a trade or business were allowed an investment tax credit against their income tax liability in an amount equal to a percentage of the cost of the qualified property. Secs. 38, 46, 48. TRA section 211, 100 Stat. 2166,

generally repealed this credit for property placed in service after December 31, 1985. One of the transitional rules to this repeal is the world headquarters rule contained in TRA section 204(a). TRA section 204(a)(7) provides:

> (7) Certain Leasehold Improvements.--The amendments made by section 201 shall not apply to any reasonable leasehold improvements, equipment and furnishings placed in service by a lessee or its affiliates if--
>
>> (A) the lessee or an affiliate is the original lessee of each building in which such property is to be used,
>>
>> (B) such lessee is obligated to lease the building under an agreement to lease entered into before September 26, 1985, and such property is provided for such building, and
>>
>> (C) such buildings are to serve as world headquarters of the lessee and its affiliates.
>
> For purposes of this paragraph, a corporation is an affiliate of another corporation if both corporations are members of a controlled group of corporations within the meaning of section 1563(a) of the Internal Revenue Code of 1954 without regard to section 1563(b)(2) of such Code. Such lessee shall include a securities firm that meets the requirements of subparagraph (A), except the lessee is obligated to lease the building under a lease entered into on June 18, 1986.

The requirements set forth in TRA section 204(a)(7) are cumulative, and a taxpayer such as petitioner must prove all of those requirements in order to receive the benefits of that section. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Payless Cashways v. Commissioner, 114 T.C. 72, 77 (2000).

The fact that the parties submitted this case to the Court fully stipulated does not change or otherwise lessen petitioner's burden in this case. Rule 122(b); Kitch v. Commissioner, 104 T.C. 1, 8 (1995), affd. 103 F.3d 104 (10th Cir. 1996).

We focus on the text of TRA section 204(a)(7)(C); i.e., the leased building described in section 204(a)(7) is "to serve as world headquarters of the lessee and its affiliates." TRA sec. 204(a)(7)(C). In accordance with this text, a corporate taxpayer such as petitioner must establish that: (1) It has affiliates and (2) the leased building serves as its world headquarters and the world headquarters of its affiliates. Petitioner has not established either of these requirements.

As to the first requirement, petitioner argues that its members were its affiliates. We disagree. For purposes of this case, we find illuminating United States v. Kjellstrom, 100 F.3d 482 (7th Cir. 1996), affg. 916 F. Supp. 902 (W.D. Wis. 1996), a case decided by the court to which this case is appealable. In Kjellstrom, a husband and wife and their four sons were the shareholders of an S corporation named Wisco Industries, Inc. (Wisco). The husband was Wisco's chief executive officer, and the four sons worked for Wisco in various officer or other capacities. Wisco manufactured and sold metal stamping, and it had its office and a separate assembly plant in Wisconsin and another facility in Alabama.

The taxpayers in <u>United States v. Kjellstrom</u>, <u>supra</u>, namely, Wisco's six shareholders, argued that Wisco qualified under TRA section 204(a)(7). The Court of Appeals for the Seventh Circuit disagreed. According to the court, Wisco had no affiliates. The court also found that Wisco did not have a world headquarters. <u>Id.</u> at 484-485.

We believe that the relationship of Wisco and its shareholders is sufficiently similar to the relationship of petitioner and its members to warrant application of <u>United States v. Kjellstrom</u>, <u>supra</u>, to the facts herein. Petitioner and Wisco are both corporations, and petitioner's members and Wisco's shareholders are the owners of their respective corporations. Whereas petitioner's owners are called members and Wisco's owners are called shareholders, we conclude that this difference in nomenclature is a mere distinction without a difference. Petitioner's members actively participated in its business, just as Wisco's shareholders did in Wisco's business, and the members and the shareholders were the heart and soul of the respective businesses. Our review of the General Not For Profit Corporation Act of the State of Illinois, in the light of the general corporate scheme, also has uncovered no significant difference in the rights, benefits, or obligations of a member vis-a-vis a

shareholder.  We conclude that petitioner's members were not its affiliates for purposes of TRA section 204(a)(7).[2]

Even if petitioner's members were its affiliates for purposes of TRA section 204(a)(7), petitioner would have failed the second requirement; to wit, that the leased building serve as the world headquarters of it and each of its affiliates. Although the CME Center arguably served as petitioner's "world headquarters" in the sense that petitioner had offices and employees located throughout the world, see Payless Cashways v. Commissioner, supra, petitioner has not established that the CME Center also served as the world headquarters of its approximately 2,700 members.  Approximately 1/4 of those members are corporations and the remainder are individuals.  Under the holding of the Court of Appeals for the Seventh Circuit in United States v. Kjellstrom, supra, a corporation does not qualify for the world headquarters exception merely by virtue of the fact that the corporation is owned by individuals and has more than one office.

---

[2] Nor do we believe that petitioner was an affiliate of either CCP or PMT for purposes of sec. 204(a)(7) of the TRA, Pub. L. 99-514, 100 Stat. 2146.  Petitioner looks solely to its 10-percent ownership interest in each partnership and concludes from this bare fact that it and the partnerships are affiliates.  We disagree.  None of the shareholders in United States v. Kjellstrom, supra, were considered by the Court of Appeals for the Seventh Circuit to be Wisco's affiliate, and the interest of at least one of those shareholders was at least 16.6 percent.

We hold that petitioner does not meet the requirements of TRA section 204(a)(7). We have considered each of the parties' arguments and have rejected those arguments not discussed herein as without merit. Accordingly,

Decisions will be entered

under Rule 155.